Leslie Ann ROBINSON

v.

William L. FULLITON and
Valerie T. Corder.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Feb. 19, 2003 Session.

Nov. 6, 2003.

James R. Garts, Jr., and Shannon E. Holbrook, Memphis, Tennessee, for the appellant, Valerie T. Corder.

Mimi Phillips, Memphis, Tennessee, for the appellant, William L. Fulliton.

Ronald Krelstein and Rebecca Miller, Memphis, Tennessee, for the appellee, Leslie Ann Robinson.

## OPINION

HOLLY M. KIRBY, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

This case involves the trial court's refusal to expunge the records of a criminal contempt proceeding. In the underlying divorce action, the wife moved for criminal contempt sanctions against the husband's attorney. The trial court assigned a special prosecutor to investigate the criminal contempt charges against the attorney. The special prosecutor later determined that there was insufficient evidence of contempt. The attorney thereafter requested that the trial court expunge the public records relating to the charge of criminal contempt under the expungement statute, Tennessee Code Annotated § 40–32–101(a)(1). The trial court denied the attorney's request, concluding that the statute did not apply to a criminal contempt proceeding within the meaning of the statute. The attorney now appeals. Although the rules of appellate procedure do not provide for the attorney to appeal the trial court's decision relating to expungement, the appeal will be treated as a petition for a writ of certiorari. We now grant the writ and reverse the trial court's decision, concluding that the expungement statute applies insofar as the contempt charges were criminal in nature.

On November 9, 1999, Plaintiff/Appellee Leslie Ann Robinson ("Wife") filed a complaint for divorce against Defendant/Appellant William L. Fulliton ("Husband"). Appellant Valerie T. Corder ("Corder") was retained to represent Husband in the divorce action. During the course of discovery, Husband, through Corder, sought the production of Wife's psychiatric and psychological records. On September 29, 2000, after much debate regarding the is-

sue, the trial court entered an order indicating that these records were not discoverable and denying Husband's motion to compel production of them.

On November 2, 2000, Corder hand delivered a letter to the law office of Wife's divorce attorney, stating her intent to return to his office on November 6, 2000, to review discovery materials that she presumed would be available for inspection and copying.[1] On November 6, 2000, as indicated in her letter, Corder returned to Wife's attorney's law office for the stated purpose of reviewing discovery materials. Apparently by mistake, a paralegal in the law office of Wife's attorney released to Corder a portion of the disputed psychological records.[2] Upon discovery of this, Corder apparently initially refused to return the records.

On November 7, 2000, based on Corder having obtained copies of Wife's psychological records and her refusal to return them, Wife filed a motion to, among other things, join Corder as a party in the lawsuit and find her in "criminal contempt" of the Court's September 29, 2000 order denying Husband's motion to compel production of Wife's mental health records. Shortly thereafter, on the same date, Wife, her attorneys, and Corder appeared before the trial court for an emergency hearing on Wife's petition. At that time, the trial court gave oral notice that the contempt hearing would be scheduled for November 17, 2000. Additionally, the trial court issued a fiat, ordering Corder to appear and defend the charge of contempt, and to show cause why she should not be held in contempt of the trial court's order. The trial court subsequently appointed a Special Prosecutor to investigate the contempt allegations made in the petition. According to Wife, the psychological records obtained by Corder were retrieved by Corder's counsel in unopened envelopes and were given to the Special Prosecutor.

On January 24, 2002, the Special Prosecutor filed his report.[3] The Special Prosecutor's report concluded that he did not believe that the evidence established that Corder was in contempt of court. Therefore, on April 22, 2002, Judge Acree entered an order dismissing the contempt proceeding against Corder.

On May 2, 2002, Corder filed a motion to expunge the public records relating to the criminal contempt proceedings pursuant to Tennessee Code Annotated § 40–32–101(a)(1). That statute provides in pertinent part:

**40–32–101. Destruction or release of records.**—(a)(1) All public records of a person who has been *charged with a misdemeanor* or a felony, and which charge has been dismissed ... shall, upon petition by that person to the court having jurisdiction in such previous action, be removed and destroyed without cost to such person.

Tenn.Code Ann. § 40–32–101(a)(1) (Supp. 2002) (emphasis added) ("expungement statute"). Corder argued that, because she was "charged with a misdemeanor" by virtue of the criminal contempt proceedings, and because those charges were dismissed, the trial court was required to

---

1. We note that Wife's appellate counsel was not involved in the trial court proceedings.

2. The circumstances surrounding Corder's receipt of the psychological records were hotly disputed in the trial court, but are not relevant to the expungement issues on appeal.

3. The Special Prosecutor's report was filed under seal. It was not filed as a part of the appellate record, and this Court has denied Wife's motion supplement the record to include the report. Therefore, we do not consider the report in reaching a determination on the merits of this appeal.

expunge the records relating to the proceedings pursuant to the statute. On June 14, 2002, the trial court entered an order denying Corder's motion for expungement, stating that "it is this Court's opinion that [§ 40–32–101], pertaining to expungement, does not apply to this type of a criminal contempt proceedings." Corder now appeals that order.[4]

On appeal, Corder makes the same argument as in the trial court, that a charge of criminal contempt is the equivalent of a misdemeanor charge for purposes of section 40–32–101. She asserts that, because the punishment for criminal contempt could be a fine and/or imprisonment for less than a year, then the criminal contempt charge would be considered a misdemeanor charge under the statutory definition of "misdemeanor". Thus, because the contempt charge, a misdemeanor charge, was ultimately dismissed, the trial court was required to expunge the record of all proceedings relating thereto upon her request according to the expungement statute. In contrast, Wife argues[5] that the trial court's decision was correct because (1) the contempt proceedings below were actually civil in nature and, thus, section 40–32–101 would not apply, and (2) even if the proceedings below were criminal in nature, that fact does not necessarily require that the records relating to those proceedings be expunged under the statute.

Initially, we address Corder's right to appeal the trial court's decision. In *State v. Adler*, 92 S.W.3d 397 (Tenn.2002), the Tennessee Supreme Court stated that "the General Assembly specifically chose to allow neither the State nor a criminal defendant an appeal as of right under Rule 3 [of the Tennessee Rules of Appellate Procedure] from an unfavorable ruling concerning an expungement order." 92 S.W.3d at 401. In that case, appellant Adler was indicted for aggravated child neglect of a child under six years of age, a felony. After a jury trial, Adler was convicted of the lesser-included offense of reckless endangerment, a misdemeanor. *Id.* at 399. Pursuant to section 40–32–101, Adler petitioned for expungement of all public records pertaining to his indictment, prosecution, and trial for aggravated child neglect. The trial court granted Adler's petition for expungement. *Id.*

The State appealed the trial court's expungement decision pursuant to Rule 3(c) of the Tennessee Rules of Appellate Procedure. The Court of Criminal Appeals heard the appeal. In an earlier case, *State v. McCary*, 815 S.W.2d 220 (Tenn.Crim. App.1991), the criminal appellate court had addressed whether Rule 3(b), applicable to criminal defendants, provided a basis on which a criminal defendant could appeal the denial of a request for expungement. The *McCary* court determined that, despite the fact that expungement was not enumerated in the Rule as a ruling from which a criminal defendant could appeal,

---

4. Prior to oral argument in this cause, Wife filed a motion to dismiss the appeal based on *State v. Adler*, 92 S.W.3d 397 (Tenn.2002), in which the Court held that neither the State nor a defendant is authorized to appeal a trial court's expungement order under Rule 3 of the Tennessee Rules of Appellate Procedure. *See Adler*, 92 S.W.3d at 401. That motion was denied, and oral argument was heard on Corder's appeal. We address the application of *Adler* in more detail later in this Opinion.

5. Wife appears in this appeal as the "Appellee." Although Wife sought an order of contempt against Corder, the expungement petition is a separate proceeding, and it may be that the State, rather than Wife, would be the appropriate "Appellee" in this appeal. Neither party raises this issue, however, and we need not address it in this Opinion.

the criminal defendant nevertheless had a right to appeal, because the omission of that ground for appeal was "apparently an oversight in the drafting of the rule." *McCary,* 815 S.W.2d at 221. Based on the reasoning in *McCary,* the intermediate appellate court in *Adler* permitted the State to appeal the granting of Adler's petition for expungement. On appeal, in *Adler,* the Tennessee Supreme Court reversed the decision of the intermediate appellate court, rejecting the reasoning in *McCary. Adler,* 92 S.W.3d at 401. The Court noted that Rule 3(c) of the Tennessee Rules of Appellate Procedure permits the State to appeal as of right only in a limited number of circumstances, and that the advisory commission comment to the Rule stated that appeal as of right would lie *"only* in those circumstances specified...." *Id.* at 400 (quoting Advisory Commission Comment to Rule 3 (emphasis added)). Disagreeing with *McCary's* conclusion that the failure to provide for such an appeal was "an oversight," the Court held:

> Because the expungement statute was in effect at the time Rule 3 became effective, we must conclude that this Court and the General Assembly specifically chose to allow neither the State nor a criminal defendant an appeal as of right under Rule 3 from an unfavorable ruling concerning an expungement order.
>
> Because of the plain and unambiguous language of Rules 3(b) and 3(c), we conclude that neither the State nor a criminal defendant has the authority to appeal as of right an unfavorable ruling concerning an expungement order under Rule 3.

*Id.* at 401.

Corder argues that the holding in *Adler* is merely dicta as it applies to criminal defendants, since the appeal in *Adler* was filed by the State, not a criminal defendant. Although Corder is correct in this regard, the Court in *Adler* specifically stated that its reasoning applied to appeals filed by both the State and criminal defendants. The Court further stated that "[t]o the extent that *McCary* is inconsistent with this opinion, it is overruled." *Adler,* 92 S.W.3d at 401. In light of this explicit statement, we are constrained to apply the holding in *Adler* to the facts of this case and to conclude that Corder is not entitled to appeal the unfavorable expungement decision by the trial court.

Corder argues in the alternative that her appeal should be treated as a petition for a writ of certiorari. In *Adler,* despite its holding that neither the State nor a criminal defendant has the right to appeal a ruling regarding expungement, the Court permitted the appeal to proceed as a petition for a writ of certiorari pursuant to Tennessee Code Annotated § 27–8–101. That section provides:

> The writ of certiorari may be granted whenever authorized by law, and also in cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

Tenn.Code Ann. § 27–8–101 (2000). The *Adler* Court reasoned that the State's argument—that the word "charge" in the expungement statute embraces all charges, including lesser-included offenses—involved an allegation that the trial court acted without legal authority. Thus, there being "no other plain, speedy, or adequate remedy," the court treated the State's appeal as a petition for a writ of certiorari and considered the merits of its argument. *Adler,* 92 S.W.3d at 401. Ultimately, the Court affirmed the trial court's grant of Adler's petition for expungement. *Id.* at 402.

Corder argues that, as in *Adler*, her appeal should be treated as a petition for a writ of certiorari. We note that the substantive arguments made by Corder and by the State in *Adler* are very similar. Corder argues that the trial court was without legal authority to deny her request for expungement based on the definition of "misdemeanor" in the statute, whereas the State in *Adler* based its argument on the proper definition of the term "charge" as it is used in the statute. In *Adler*, the Supreme Court characterized the State's position as an allegation that "the trial court was acting contrary to the law in granting the [defendant's] petition for expungement." In the same way, Corder's argument involves an allegation that the trial court acted contrary to the law in failing to grant her expungement request. Moreover, because there is no right to appeal an unfavorable ruling on expungement, "there is no other plain, speedy, or adequate remedy" without granting the writ. *See* Tenn. Code Ann. § 27–8–101. Again, because of the similarity of the legal arguments made in *Adler* and in the case at bar, we are compelled to follow the Court's conclusion in *Adler* that this is an appropriate case for granting the writ of certiorari and entertaining the merits of Corder's appeal.[6]

We turn now to the merits of the case. The trial court rejected Corder's request based on the conclusion that the expungement statute "does not apply to this type of a criminal contempt proceeding." The expungement statute applies to "public records of a person who has been charged with a misdemeanor . . . ." Tenn.Code Ann. § 40–32–101. Corder argues that, because

an unfavorable ruling could have resulted in punishment by the assessment of a fine or imprisonment for less than a year, the charge was actually a misdemeanor charge. She points out that Tennessee Code Annotated § 39–11–110 provides for the definition of "misdemeanor," stating that "[a]ll violations of the law punishable by fine or confinement for less than one (1) year, or both, are denominated misdemeanors." Corder notes that criminal contempt is punishable by a fine or imprisonment for up to ten days, and argues that criminal contempt must be considered a misdemeanor. In contrast, Wife maintains that the contempt proceedings below were actually civil, rather than criminal, in nature, and that the expungement statute is therefore not applicable.

Determining whether a contempt sanction is civil or criminal in nature "turns on the 'character and purpose' of the sanction involved." *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). The purpose of a civil contempt sanction is remedial, in that it is intended to coerce compliance by the contemnor, and to vindicate the rights of the complainant. *See id.* at 828, 114 S.Ct. 2552. "Thus, with civil contempt, the one in contempt has the 'keys to the jail' and can purge the contempt by complying with the court's order." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn.2000). A contempt sanction is considered to be criminal, however, when the sanction is imposed by the court "simply as punishment for the contempt." *Id.* Under Tennessee Code Annotated § 29–9–103, the sanction for criminal

---

6. Were it not for the holding in *Adler,* we would be less inclined to grant the writ, because, in our view, allowing appeals based on the arguments of the State in *Adler* and Corder in the instant case allow the aggrieved party to appeal a trial court's decision on expungement despite the fact that the right to

a direct appeal on the issue is not granted in Rule 3. In other words, allowing such arguments to be entertained via a writ of certiorari allows the exception to swallow the rule, because a party would in essence have an avenue for appealing the ruling on an expungement petition in every case.

contempt cannot exceed a fine of $50 or imprisonment for ten days.[7] Unlike civil contempt, "[a] party who is in criminal contempt cannot be freed by eventual compliance." *Id.*

Wife argues that the contempt proceedings in this case were civil in nature, because she sought "civil" remedies, requesting that Corder be compelled to return the records and enjoined from disseminating any information contained therein. She argues that she filed the motion for contempt in this case to vindicate her own rights, not the rights of the State.

Corder contends, however, that the circumstances surrounding the contempt proceedings indicate that they were criminal in nature. She points out that Wife's motion sought a finding that Corder was in "criminal contempt," and that the language in the fiat issued on November 7, 2000, indicated that the trial court had "[s]et a hearing on the issue of *Criminal* Contempt on the 17th day of November, 2000." (Emphasis added). The fiat also contained the language indicating that the hearing pertained to a criminal charge of contempt against Corder:

> To the Clerk of the Circuit Court: ... Have further notice given to Valerie Corder, Esquire, that Petitioner, Leslie Anne Robinson, has alleged that Valerie Corder, Esquire, is in *criminal contempt* of the prior orders of this Court; that Petitioner intends to meet her burden of proof by showing beyond a reasonable doubt that Valerie Corder, Esquire, is not required to give evidence

against herself and she is presumed innocent until proven guilty beyond a reasonable doubt.

(Emphasis added). The fiat satisfied many of the notice requirements for a hearing on criminal contempt set forth in Rule 42(b) of the Tennessee Rules of Criminal Procedure. Moreover, Corder's attorney turned over Wife's psychological records to the Special Prosecutor. Therefore, the contempt proceedings could not have been intended to coerce her into purging her contempt, because the allegedly ill-gotten records were no longer in her possession. In other words, because Corder no longer had the "keys to the jail," Corder contends, the subsequent proceedings against her can only be characterized as criminal.

Considering all the circumstances, we must conclude that the proceedings against Corder were partially criminal and partially civil in nature. The motion for contempt sanctions filed by Wife requested sanctions for "criminal contempt." Considering the "character and purpose" of the motion, however, Wife sought both civil and criminal sanctions against Corder. First, she sought the return of her psychological records, which the trial court had determined were not discoverable by Husband. Wife also asked the trial court to "punish Ms. Corder to the full extent of the law," and to find that Corder was "in willful contempt of this Honorable Court's order of September 29, 2000." It is apparent that the fiat issued on November 7, 2000, was intended to satisfy many of the Rule 42(b) notice requirements applicable to criminal contempt proceedings. The

---

7. Tennessee Code Annotated § 29–9–103(2000) provides:

 **29–9–103. Punishment.**—(a) The punishment for contempt may be by fine or by imprisonment, or both.

 (b) Where not otherwise specially provided, the circuit, chancery, and appellate

courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29–9–108, all other courts are limited to a fine of ten dollars ($10.00).

fact that the contempt hearing continued to proceed after Corder had turned over the psychological records is further indicia that the proceedings were at least partially criminal in nature, and were intended to vindicate the authority of the court by punishing Corder. Therefore, under all the circumstances, we find that the contempt proceedings in this case were both civil and criminal in nature.

 We next address whether the criminal contempt portion of the charge against Corder equates to a charge for a misdemeanor for purposes of the expungement statute. This issue is one of first impression. In construing the expungement statute, we must "ascertain and give effect to the legislature's intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). We must apply the "natural and ordinary meaning of the language used ... in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent." *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn.1998).

As noted above, the expungement statute states that "[a]ll public records of a person who has been charged with a misdemeanor ... which charge has been dismissed ... shall, upon petition by that person ..., be removed and destroyed without cost to such person." Tenn.Code Ann. § 4–32–101(a)(1). It is undisputed that the contempt charge against Corder was dismissed, and that she requested that the trial court expunge it from the record. The issue, then, is whether Corder was "charged with a misdemeanor" within the meaning of the statute.

In this case, the trial court found that the expungement statute "does not apply to this type of a criminal contempt proceedings." Wife argues in support of this holding, contending that a charge of criminal contempt and a charge of a statutory misdemeanor are critically different. She notes that a person charged with direct criminal contempt, based on acts committed in the presence of the court, may be summarily punished by the court before whom the direct contempt occurs. *See Black v. Blount*, 938 S.W.2d 394, 398 (Tenn.1996). Wife acknowledges that criminal contempt is generally regarded as a crime, but notes that "[p]rosecutions of criminal contempt are not intended to punish conduct proscribed as harmful by the general criminal laws. Rather, they are designed to serve the limited purpose of vindicating the authority of the court." *Id.* at 402 (quotations omitted). Furthermore, Wife argues, private counsel is not automatically disqualified from prosecuting a criminal contempt charge on behalf of his client, even though a special prosecutor was appointed in this case. *See Wilson v. Wilson*, 984 S.W.2d 898, 903–04 (Tenn. 1998). Wife points to other differences distinguishing "true crimes" from "criminal contempt," such as the fact that there would be no assessment of attorney's fees to a prosecutor in a criminal matter, while attorney's fees may be awarded in a criminal contempt proceeding in limited circumstances.

Corder argues that, under a plain reading of the statute, a charge of criminal contempt is a charge of a misdemeanor. She points out that criminal contempt is a misdemeanor under the definition in Tennessee Code Annotated § 39–11–110, which states that "[a]ll violations of the law punishable by fine or confinement for less than one (1) year, or both, are denominated misdemeanors." Because criminal contempt is punishable by a fine and/or imprisonment for up to ten days, Corder argues, then criminal contempt qualifies as a misdemeanor offense. It follows, then, that she was "charged with [the] misde-

meanor" of criminal contempt, and, consequently, the expungement statute applies. Finally, Corder points out that, while Wife contends that criminal contempt is not the same as any other misdemeanor, a conviction of criminal contempt is considered to be a misdemeanor for purposes of enhancing a criminal defendant's sentence. *See State v. Merlo*, No. 01C01–9611–CC–00471, 1998 WL 74350, at \*8 (Tenn.Ct.Crim.App. Feb. 23, 1998) (noting that the defendant had a "misdemeanor" conviction for contempt of court); *State v. Carroll*, No. 03CO1–9607–CC–00254, 1997 WL 457490, at \*4 (Tenn.Ct.Crim.App. Aug. 12, 1997) (held that it was proper to enhance the defendant's sentence based on "old misdemeanor convictions," including a conviction for contempt).

■ In construing the expungement statute, we must apply its plain language "unless an ambiguity requires resort elsewhere to ascertain legislative intent." *Browder*, 975 S.W.2d at 311. The plain language of the statute applies to "[a]ll public records of a person who has been charged with a misdemeanor." Tenn.Code Ann § 40–32–101(a)(1). Criminal contempt is considered to be an "ordinary" crime. *See Bagwell*, 512 U.S. at 826, 114 S.Ct. 2552 ("Criminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." (citations and quotations omitted)); *see also Black*, 938 S.W.2d at 402 (noting that criminal contempt is generally regarded as a crime). Under Tennessee statutes, criminal contempt is a "violation of the law punishable by fine or confinement for less than on (1) year or both" and, thus, is indeed a misdemeanor. *See* Tenn.Code Ann. § 39–11–110. While there are differences between criminal contempt and other statutory crimes, those differences do not appear to preclude the application of the expungement statute. Therefore, we conclude that a charge of a "misdemeanor" in the expungement statute includes the contempt proceedings in this case, insofar as they were criminal in nature. Accordingly, we must reverse the decision of the trial court, and conclude that the expungement statute is applicable to the criminal contempt portion of the charge against Corder in this case. The cause is remanded to the trial court for application of the expungement statute.

The trial court is reversed and remanded for proceedings not inconsistent with this Opinion. Costs are to be taxed to the appellee, Leslie Ann Robinson, for which execution may issue, if necessary.