IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 24, 2005

## MICHAEL SIMS v. BRENDA WILLIAMS

**Appeal from the General Sessions Court for White County**
**No. 16073     Sam Benningfield, Judge**

_____

**No. M2004-02532-COA-R3-CV - File January 27, 2006**

_____

The trial court found a divorced father guilty of criminal contempt and sentenced him to ninety days in jail after a hearing on the mother's petition for contempt at which the father failed to appear. We reverse because the father did not receive notice of the contempt proceedings sufficient to meet the requirements of Rule 42 of the Tennessee Rules of Criminal Procedure.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Reversed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Michael Sims, Marble Hill, Missouri, appellant, Pro Se.

Brenda Williams, appellee, not represented on appeal.

### OPINION

### I. DIVORCE, CUSTODY AND VISITATION

This case arose from a bitter long-running dispute over custody and visitation between the divorced parents of a minor child. The only question before this court is whether to sustain a finding of contempt against the father which the trial court imposed after a hearing that the father did not attend.

The record consists of a large volume of motions and orders that were generated by the years of post-divorce custody struggles between the parties. We have reviewed every page of the record and, while there are some apparent gaps, the filings indicate a history of accusations by each parent against the other. We need not outline in detail the parties' prior history since our review is limited to a particular proceeding and resulting order. Some basic background is, however, necessary.

Michael Sims and Brenda Williams are the parents of Samuel Beverlee Sims, who was born January 25, 1988.[1] When they divorced, custody was initially given to the mother, and the father's visitation was governed by a previously-entered order prohibiting contact between the father and Samuel. The visitation arrangement was modified over time,[2] and the father was eventually given unsupervised visitation every other Saturday, with the parties to share the burden of transportation to a site between the towns they lived in.

On May 23, 2000, Mr. Sims filed a petition asking for joint custody of Samuel. He claimed that his former wife had failed for two years to comply with the court order to transport Samuel to visitation. There is no order in the record indicating that a hearing was ever conducted on the father's petition.

The father apparently moved out of state some time after filing the May 2000 petition.[3] The next document in the record is the father's motion for contempt and to modify visitation, filed on March 18, 2003. Mr. Sims asked the court to find Ms. Williams in contempt for not providing visitation in strict compliance with the 1996 order.[4]

The father subsequently filed another motion to have the mother held in contempt. The motion makes reference to a May 6, 2003 order by the court (which is not in the record) regarding visitation. On May 20, 2003, the trial court granted the father's motion, found the mother in contempt, and sentenced her to ten days in jail for failing to provide visitation, with the sentence suspended upon the condition of strict compliance with the visitation order. The same order declared that the father had not proved a change of circumstances sufficient to support a change of custody.

The father then filed a new motion for contempt, asking the court to carry out its sanction because the mother was still failing to provide him with visitation. He requested that a hearing be conducted on his motion on October 13, 2003. On that date, the trial court approved a new parenting

---

[1] Consequently, Samuel will turn 18 around the time of this opinion's filing.

[2] At least some modifications were accompanied by findings that the mother had not complied with the visitation orders.

[3] The record includes an October 3, 2000, child support order, reducing Mr. Sims' obligation to $100 per month, to be paid into the Central Child Support Receipting Unit. However, upon a later motion by the District Attorney the court retired the matter from the court's active docket on November 15, 2001, because "the respondent is living out of State and the Child Support Office will forward to UIFSA for enforcement."

[4] The following month, the father filed a motion to have the State take physical custody of Samuel under Tenn. Code Ann. § 36-6-235, which authorizes the court to issue a warrant to take custody of the child if it finds that the child is "immediately likely to suffer serious physical harm or be removed from this state." He claimed that the mother failed to have the child attend school and that she previously fled the state when the Department of Human Services threatened action on an unrelated matter. A handwritten notation on the face of the motion indicates that it was dismissed on May 6, 2003.

plan which explicitly modified the 1996 custody order and gave custody of Samuel to the father.[5] The father was ordered to provide visitation for the mother every fourth weekend and to provide transportation from Missouri. Once the father obtained custody of Samuel, the same pattern of allegations of withholding of visitation followed by contempt motions continued, but with the parties' roles reversed.

## II. THE CONTEMPT ORDER AT ISSUE

On June 28, 2004, the mother filed a petition for contempt against the father claiming that he had failed to bring the child to her as he had been ordered to do and that he had sabotaged all telephone communication with her by getting an unlisted number. She asked that the father be held in contempt and that he be ordered to immediately allow her visitation, "both physical and by telephone, with the minor child as ordered in the Permanent Parenting Plan."

The father responded to the petition for contempt by asserting that Samuel had exercised his own rights by refusing to visit his mother. A notarized affidavit signed by Samuel was attached to the response, which recited the sixteen year old minor's reasons for declining visitation.[6] The father also filed a petition to modify visitation and telephone access, alleging that the mother had physically and emotionally abused Samuel. Mr. Sims made several disturbing allegations in his petition and also claimed that the mother had threatened and harassed him.

The court scheduled a hearing on the mother's petition for contempt for August 23, 2004. The father requested a continuance in writing. The court ordered that the hearing be continued until September 7, 2004, and that it include consideration of other matters, including the father's petition to modify visitation. The court ordered the father to bring his son to court on that date "so the Court can inquire from him as to his health and safety."

Mr. Sims, the father, failed to appear at the September 7 hearing, and the court conducted the proceeding in his absence, resulting in a finding of contempt. The court's order, entered October 7, 2004, stated that "based upon the sworn testimony of Brenda Williams and the Court's review of the record and pleadings as a whole, the Court found Michael Sims guilty of nine (9) counts of willful contempt and ordered Michael Sims to serve ten (10) days on each count the sentences to run consecutively." Shortly thereafter, the mother filed a petition to have custody of Samuel transferred to her.

---

[5] A later petition by the father states that the mother's custody of Samuel was terminated because she made him consistently truant from school.

[6] The reasons included allegations that the mother had been guilty of child abuse and that Samuel could see in hindsight that "my safety in my mother's home was, and is seriously in question." Samuel's affidavit concluded with the statement that he was not opposed to regular visitation with the mother so long as it was supervised in the office of the Department of Children's Services in Bollinger County, Missouri.

In its October 7, 2004 order, the court directed Mr. Sims to appear on September 28 to show cause why the sentence for contempt should not be immediately executed. The hearing was continued until October 25. Mr. Sims subsequently sent the court two written requests that the October 25 hearing be continued or that it be conducted telephonically. He alleged that he was suffering from congestive heart failure, was awaiting testing and possible bypass surgery, and was not able to safely travel the 400 miles from his home to White County.

In an order dated October 26, 2004, the trial court denied the request for a telephonic hearing because Mr. Sims did not provide it with the medical records it requested. The court also stated that it was extremely concerned because in his second letter the father had stated that "Sam can't be in Court Monday as he is in the hospital in St. Louis and will be for a couple of weeks. If you need to verify that the hospital number is 6369475064." The court noted that the father did not furnish any other information about the nature or severity of his son's illness, and it expressed concern about the father's ability to take care of the boy in light of his own illnesses.

In the same order, the court ordered that immediate temporary custody of Samuel be transferred to the mother, "and further, as soon as it is medically reasonable, the minor child shall be transported to White County, Tennessee, to be brought before this court as soon as is possible so the court can inquire from the minor child as to his health and safety." Presumably, the court anticipated further hearings on the mother's petition to modify permanent custody.

Although the father, appearing pro se as he had throughout these matters, attempted various appeals of various orders, we have determined that the only order on appeal is the October 7, 2004 order holding Mr. Sims in contempt, which was stayed pending the outcome of the appeal. Ms. Williams has not filed a brief in this court.

### III. CRIMINAL CONTEMPT

The trial court's October 7, 2004 order indicates a hearing was held on the mother's contempt petition and evidence was taken.[7] No transcript of that hearing appears in the record before us, and there is no statement of the evidence. We are able, nonetheless, to resolve this appeal on the basis of the technical record alone.

Willful disobedience to a court's order is contempt. Tenn. Code Ann. § 29-9-103; *Black v. Blount*, 938 S.W.2d 493, 398 (Tenn. 1996). Contempts are traditionally classified as civil or criminal, depending on the character and purpose of the penalty imposed for the contemptuous act.

---

[7] To the extent Mr. Sims's arguments about his inability to attend imply the contempt was based on his failure to comply with the court's order that he appear and bring Samuel to court, that implication is not borne out by the order. Mr. Sims's arguments regarding his absence would relate only to the question of whether the trial court should have continued the contempt hearing another time, having granted the father one continuance already, or how Tenn. R. Crim. App. 43 applied since this was a criminal contempt proceeding. Additionally, much of the argument relates to his failure to attend the show cause hearing, not the contempt hearing.

*Ahern v. Ahern*, 15 S.W.3d 73, 78-79 (Tenn. 2000); *Robinson v. Fulliton*, 140 S.W.3d 304, 309 (Tenn. Ct. App. 2003).

It is clear from the trial court's order and the punishment or sanction imposed therein that Mr. Sims was found to have committed criminal contempt. He was sentenced to incarceration for each of nine "counts" of willful contempt; the "sentences" for each count were to run consecutively; the sentence of incarceration was not conditioned on the performance by Mr. Sims of any purging or compliant act and so he did not hold the "keys to the jail;" and the purpose was punishment for past acts, not coercion to comply. *Ahern*, 15 S.W.3d at 79; *Storey v. Storey*, 835 S.W.2d 593, 599 (Tenn. Ct. App. 1992).

A person facing criminal punishment is entitled to greater procedural safeguards than a party in a civil suit. Consequently, a party charged with criminal contempt is entitled to many of the rights that attend other criminal prosecutions. For example, a party facing punishment for criminal contempt is entitled to the presumption of innocence and the right to require that his guilt by proven beyond a reasonable doubt. *Storey*, 835 S.W.2d at 599; *Strunk v. Lewis Coal Co.*, 547 S.W.2d 252, 253 (Tenn. Crim. App. 1976). Certain principles regarding sentencing for criminal convictions also apply.[8] *State v. Wood*, 91 S.W.3d 769, 776-77 (Tenn. Ct. App. 2002).

Particularly applicable here, sufficient notice meeting the requirements of due process must be given as a prerequisite to a court's authority to punish a party for criminal contempt committed outside the presence of the court.[9] *Storey*, 835 S.W.2d at 599-600. This court has addressed the notice requirements previously:

> With regard to notice, the United States Supreme Court stated in *Gompers*[10] that
>
> > manifestly every citizen, however unlearned in the law, by mere inspection of the papers in contempt proceedings ought to be able to see whether it was instituted for private litigation or for public prosecution, whether it sought to benefit the complainant or vindicate the court's authority. He should not be left in doubt as to whether relief or punishment was the object in view. He is not only entitled to be informed of the nature of the charge against him, but to know that it is a charge and not a suit.

---

[8] However, in a proceeding under Tenn. Code Ann. § 29-9-102, where the potential penalty includes no more than ten days incarceration, the defendant is not entitled to a jury trial. *Ahern*, 15 S.W.3d at 82.

[9] Subsection (a) of Rule 42 of the Tennessee Rules of Criminal Procedure deals with direct criminal contempt and authorizes a judge to punish a defendant summarily if the judge certifies that he or she saw or heard the conduct constituting the contempt and it was committed in the actual presence of the court.

[10] *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed 797 (1911).

*Id*. at 446, 31 S.Ct. at 500, 55 L.Ed. at 807-08.

> In addition, Rule 42(b) of the Tennessee Rules of Criminal Procedure requires that a criminal contempt be prosecuted on notice, which "shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and *describe it as such*." Tenn. R. Crim. Proc. 42(b) (emphasis added).

*Storey*, 835 S.W.2d at 599-600.

As the *Storey* court noted, Rule 42 of the Rules of Criminal Procedure, governing criminal contempt, applies to such actions arising out of civil litigation. Subsection (b) of that rule provides that prosecution of criminal contempt committed outside the presence of the court must proceed only upon proper notice which "shall state the essential facts constituting the criminal contempt charged and **describe it as such**."

This court has many times vacated a judgment of criminal contempt where the petition did not provide that the type of contempt at issue was criminal rather than civil. *See*, *e.g. Storey*, 835 S.W.2d at 600; *Jones v. Jones*, No. 01A01-9607-CV-00346, 1997 WL 80029, at *3 (Tenn. Ct. App. Feb. 26, 1997) (listing opinions so holding). As we have explained:

> The Tenn. R. Crim. P. 42(b) notice must specifically charge a party with criminal contempt and must succinctly state the facts giving rise to the charge. Because the same conduct can constitute both civil and criminal contempt, the Tenn. R. Crim P. 42(b) notice eliminates any possible confusion concerning the nature of the proceeding. Providing this notice at an early stage better enables the alleged contemner to invoke his or her procedural rights. *United States v. United Mineworkers*, 330 U.S. 258, 374, 67 S.Ct. 677, 736, 91 L.Ed. 884 (1947) (Rutledge, J., dissenting) (stating that "[o]ne who does not know until the end of litigation what his procedural rights in trial are, or may have been, has no such rights").

*Id*. *See also Weissfeld v. Weissfeld*, No. E2004-00134-COA-R3-CV, 2004 WL 2070979, at *4 (Tenn. Ct. App. Sept. 16, 2004); *Bailey v. Crum,* E2004-00953-COA-R3-CV, 2005 WL 1488585, (Tenn. Ct. App. June 23, 2005)( Tenn. R. App. P. 11 perm. app. denied); *Tudors v. Bell*, No. 01-A-01-9802-CV00103, 1999 WL 187331, at *2. (Tenn. Ct. App. April 7, 1999).

The petition for contempt filed herein did not provide any indication that Ms. Williams was seeking criminal contempt, and there is nothing in the record to show that Mr. Sims was otherwise put on notice that he was facing charges of criminal contempt. Consequently, we must vacate the order finding Mr. Sims in criminal contempt and ordering his incarceration as punishment.

**IV.**

The trial court's order of contempt is vacated. We remand this case to the General Sessions Court of White County. Because the appellee has not participated in the appeal or challenged the arguments made by the appellant, we waive the costs on appeal.

_____

PATRICIA J. COTTRELL, JUDGE