IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 8, 2005 Session

## CURTIS LEE CANTRELL v. JAMI LYNN CANTRELL

**Appeal from the Chancery Court for Lincoln County**
**No. 11,784     J.B. Cox, Chancellor**

---

**No. M2003-01075-COA-R3-CV  - Filed January 27, 2006**

---

This appeal arises from a divorce case.  After ten years of marriage, the husband filed a divorce complaint in the Chancery Court for Lincoln County.  Even though both parties sought to be the primary residential parent prior to the trial, the court placed the children in the husband's custody after the wife attempted suicide.  After conducting a bench trial, the court designated the father as the primary residential parent and granted the mother unsupervised visitation.  On this appeal, the mother asserts that the trial court erred with regard to the custody of the children and the division of marital assets.  She also insists that the trial court erred by holding her in criminal contempt. While we reverse the trial court's finding that the mother was in criminal contempt, we affirm the court's decisions regarding custody and the division of the marital estate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Robert J. Turner, Nashville, Tennessee, for the appellant, Jami Lynn Cantrell.

Lee Bussart Bowles, Lewisburg, Tennessee, for the appellee, Curtis Lee Cantrell.

## OPINION

### I.

Curtis Lee Cantrell and Jami Lynn Cantrell married on October 3, 1992.  They had two children together.  The first was born in 1994; the second in 1997.  After the parties experienced financial trouble and marital discord, Mr. Cantrell filed for divorce on February 21, 2002 in the Chancery Court for Lincoln County.  He cited irreconcilable differences and inappropriate marital conduct by Ms. Cantrell.  Ms. Cantrell filed an answer and counterclaim seeking to be named the children's primary residential parent.

The trial court held a hearing on the parties' proposed temporary parenting plans on April 2, 2002.  It designated Mr. Cantrell as the primary residential parent and awarded Ms. Cantrell

supervised visitation. Ms. Cantrell's attempted suicide on February 18, 2002 significantly influenced the court's temporary custody decision.[1] The trial court also permitted Mr. Cantrell to remain in the marital home pending the trial and directed him to pay all the household bills and to provide medical insurance for Ms. Cantrell and the children. The court also took steps to preserve the value of the parties' corporation.

The following year was punctuated by accusations and litigation. Ms. Cantrell accused Mr. Cantrell, among other things, of selling the parties' assets without her consent, denying her visitation and telephone contact with their children, failing to pay the household bills, and being in the company of his girlfriend when the parties' children were present. The trial court heard the evidence over four days in March 2003 and on April 22, 2003 entered an final order awarding both parties a divorce. The court designated Mr. Cantrell as the primary residential parent, awarded him forty-nine percent of the parties' corporation, and ordered the remaining marital assets to be sold and the proceeds applied to the parties' substantial marital debts. The trial court also found both Mr. and Ms. Cantrell in willful contempt of the court and sentenced each of them to forty-eight hours in jail.

Ms. Cantrell appealed. On appeal, she argues (1) that the trial court erred when it designated Mr. Cantrell as the primary residential parent, (2) that the trial court divided the marital estate inequitably, and (3) that the trial court erred by finding her in contempt for selling one of the parties' automobiles, for sending out emails pertaining to the financial situation of the parties' corporation, and for disobeying prior orders of the court pertaining to the sale of the house and the business.

## II.
### DESIGNATING MR. CANTRELL AS THE PRIMARY RESIDENTIAL PARENT

Ms. Cantrell takes issue with the trial court's designation of Mr. Cantrell as the children's primary residential parent. She argues that the evidence preponderates against the trial court's decision and that her performance as a parent, coupled with Mr. Cantrell's shortcomings, require the opposite result. Mr. Cantrell, in turn, points to his accomplishments as a parent and to Ms. Cantrell's shortcomings.

Courts customarily devise initial custody and visitation arrangements by engaging in a comparative fitness analysis that requires them to determine which of the available custodians is comparatively more fit than the other. *In re C.K.G.*, 173 S.W.3d 714, 732 (Tenn. 2005); *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001). The factors that courts weigh are identified in Tenn. Code Ann. § 36-6-106(a) (2005). The comparative fitness analysis is not intended to measure each parent against the standard of perfection. *Earls v. Earls*, 42 S.W.3d 877, 885 (Tenn. Ct. App. 2000); *Rice v. Rice*, 983 S.W.2d 680, 682-83 (Tenn. Ct. App. 1998). Rather, it provides a process that enables the courts to determine which of the parents, in light of their present circumstances, is comparatively more fit to assume and discharge the responsibilities of being a custodial parent.

---

[1] Ms. Cantrell testified that her suicide attempt followed Mr. Cantrell's telling her that he was having an affair with the mother of one of the children's playmates and that he intended to file for divorce. Even though Mr. Cantrell denied having an inappropriate relationship during the marriage, the playmate's mother is his current girlfriend. In its April 2, 2002 order, the trial court directed Mr. Cantrell to avoid associating with his girlfriend in front of the children.

The trial court conducted the customary comparative fitness analysis in determining which of the parties would be designated as the primary residential parent. It analyzed the various factors in Tenn. Code Ann. § 36-6-106(a) that it deemed to be most applicable and found that the parties were similar in terms of the quality of their relationships with the children, their ability to provide for the children, their environments, their treatment of the children with respect to abuse, and their parenting skills. The court found that Mr. Cantrell had an advantage over Ms. Cantrell with respect to continuity in the children's lives, his mental and physical health, and his home, school, and community record. The court found that Ms. Cantrell had an advantage with respect to the character and behavior of persons frequenting the home.

Based upon its comparative fitness analysis, the trial court designated Mr. Cantrell as the primary residential parent. After reviewing the record, we have concluded that the evidence does not preponderate against this designation. We therefore affirm the trial court's designation of Mr. Cantrell as the children's primary residential parent.

### III.
### THE DIVISION OF THE MARITAL ESTATE

Ms. Cantrell next takes issue with the trial court's division of the marital estate. She argues that the division of the estate was inequitable because neither of the parties favored liquidating the marital estate and because the trial court failed to give her credit for funds that were misappropriated by Mr. Cantrell. Mr. Cantrell in turn argues that the trial court did not abuse its discretion in its division of the parties' estate and takes no issue with the court's order to liquidate the parties' assets.

Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c) (2005). *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). Trial courts have wide latitude in fashioning an equitable division of marital property, *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983); *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001), and appellate courts accord great weight to a trial court's division of marital property. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Edwards v. Edwards,* 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973). Thus, we will ordinarily defer to the trial court's division of the parties' marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown,* 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994); *Mahaffey v. Mahaffey,* 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989); *Hardin v. Hardin,* 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).

At the time of the divorce, the parties' main asset was their corporation. The trial court let each party retain the same amount of interest in the corporation that they owned during the marriage. The court then allowed the children to retain their personal possessions and allowed the parties to retain their separate property. The remaining assets were then ordered to be liquidated and applied towards the parties' debts which were evenly split. In light of evidence in the record that both parties dissipated the martial assets and in light of their substantial debts, we have concluded that the trial court did not err in the way in which it divided the parties' marital estate.

# IV.
## MS. CANTRELL'S CONTEMPT CITATION

Finally, Ms. Cantrell argues that the trial court erred in making its finding of contempt against her. The trial court ordered her to serve a mandatory sentence of 48 hours in the Lincoln County Jail. Ms. Cantrell argues that this mandatory sentence amounted to criminal contempt of court and that the court erred when it found her in criminal contempt without following the due process safeguards of Tenn. R. Crim. P. 42(b).

Sanctions for criminal contempt are punitive in character, and their primary purpose is to vindicate the court's authority. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003); *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). Criminal contempt sanctions are imposed simply as punishment, *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000), and persons imprisoned for criminal contempt cannot be freed by eventual compliance with the court's orders. *Robinson v. Fulliton*, 140 S.W.3d 304, 310 (Tenn. Ct. App. 2003). Unless the contemptuous act was committed in the presence of the court, proceedings for criminal contempt must comply with Tenn. R. Crim. P. 42(b). Persons charged with criminal contempt are presumed innocent and may not be found to be in criminal contempt in the absence of proof beyond a reasonable doubt that they have willfully failed to comply with the court's order. *Black v. Blount*, 938 S.W.2d at 398; *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993).

Ms. Cantrell asserts that the criminal contempt proceeding did not comply with Tenn. R. Crim. P. 42(b). Specifically, she asserts that the court failed to explicitly designate the contempt as criminal in its Order to Appear and Show Cause. Tenn. R. Crim. P. 42(b) requires the court to give the parties notice of the contempt before prosecuting it and that this notice must include, among other things, a specific description of the contempt as criminal. *See Storey v. Storey*, 835 S.W.2d 593, 600 (Tenn. Ct. App. 1992) (reversing a criminal contempt when none of the contempt petitions against the party designated the contempt as criminal). The trial court erred by failing to inform Ms. Cantrell that she was being charged with criminal contempt. Therefore, the criminal contempt finding must be reversed. Because Mr. Cantrell does not take issue with the court's finding of contempt against him, our opinion does not affect the court's ruling with respect to Mr. Cantrell.

# V.

We reverse the April 22, 2003 order with respect to its finding of criminal contempt against Ms. Cantrell and affirm all the remaining portions of that order. We remand the case to the trial court for whatever further proceedings consistent with this opinion may be required and tax the costs of this appeal in equal proportions to Curtis Lee Cantrell and to Jami Lynn Cantrell and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.