IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

March 25, 2008 Session

## STATE OF TENNESSEE v. CORDELIA REAM

Appeal from the Juvenile Court for Dickson County, No. 10-06-089-MC
Andrew Jackson, Judge

_____

M2007-00264-COA-R3-JV - Filed September 18, 2008

_____

After the appellant pled guilty to criminal contempt in the juvenile court and received a four-day sentence, she appealed to circuit court, contending that the sentence was excessive. After being unsuccessful in circuit court , she then appealed to this Court. We found that the appeal of a criminal contempt conviction should be directly to this Court and not to the circuit court. Having resolved the appeal process issue, this Court finds that the acceptance of the guilty plea below was in contravention of constitutional standards and was plain error. The criminal contempt conviction is therefore vacated and this case is remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed and Remanded.**

WALTER C. KURTZ, SR.J., delivered the opinion of the court, in which DAVID FARMER, J., and HOLLY M. KIRBY, J., joined.

Mitchell B. Dugan, Dickson, Tennessee, for the appellant Cordelia Ream.

Douglas Earl Dimond, Senior Counsel, Office of the Attorney General, Nashville, Tennessee, for the State.

## OPINION

This appeal arises from a contempt proceeding against Cordelia Ream. The juvenile court held Ms. Ream in criminal contempt for violation of a court order and sentenced her to serve four days in jail. This appeal ensued. For the following reasons we reverse the decision of the juvenile court and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

The Court finds it useful to first turn to the proceedings before this Court, and then we will return to the proceedings before the juvenile court. Ms. Ream was held in contempt in the juvenile court on December 6, 2006, and sentenced to serve four days. Ms. Ream filed a notice of appeal to the circuit court, and then on January 25, 2007, the circuit court held a hearing and affirmed the juvenile court order. A notice of appeal was filed to this Court from the circuit court's ruling on January 30, 2007. There was a subsequent delay so that the record could be augmented by the supplemental filing of the transcript of the proceedings in juvenile court. The State took the position from the beginning of the appeal process that the appeal from juvenile court should have come directly to this court and not to the circuit court.

The case was argued on its merits before this Court on March 25, 2008. In addition to the merits of the contempt and the sentence imposed, the State raised the issue of the appropriate procedure of appealing a criminal contempt conviction from juvenile court.

This Court agreed with the State's assertion regarding the appeal process. The appeal of a finding of criminal contempt in juvenile court is directly to this Court.[1] Subsequent to the oral argument, this Court entered an order on April 18, 2008, holding the appeal in abeyance and remanding the case to the circuit court with directions to enter an order transferring the appeal directly to this Court pursuant to Tenn. Code Ann. §16-4-108(a)(2). The circuit court entered such an order on May 20, 2008.

On June 10, 2008, this Court ordered the appeal to be reinstated and allowed the parties to rely on their prior oral arguments and briefs. The Court did, however, order further briefing on whether the guilty plea that resulted in the contempt conviction was entered consistent with constitutional standards, and, if not, whether the error constituted plain error. The appellant was given twenty-five days to file her brief, the State was given twenty-five days to respond after the filing of appellants' brief, and then the appellant was given ten days to file a reply brief. Those briefs have now been filed, and the case is ready for disposition.

On October 11, 2006, Ms. Ream and her son appeared in juvenile court to answer charges that her son had violated a Dickson County skateboarding ordinance. The matter was continued to October 25, 2006. Ms. Ream did not return to court on that date as required. Before that date, in

---

[1] *See, e.g., State v. E.G.P.*, 2003 WL 22134896, at *1 (Tenn. Ct. App. September 12, 2003), *no perm. to app. filed* (in which the State appealed directly to the Court of Appeals from a juvenile court order holding the State in civil contempt); *State v. Jones*, 1997 WL 181525, at *1 (Tenn. Ct. App. April 16, 1997), *no perm. to app. filed* (in which the State appealed directly to the Court of Appeals from a juvenile order holding a state agency and its director in criminal contempt); *In re Bowling*, 2007 WL 2780378 (Tenn. Ct. App. September 25, 2007) (in which lawyer appealed directly to the Court of Appeals from a juvenile court order holding her in criminal contempt.).

fact, Ms. Ream's son moved to Mississippi to live with his father.

On October 25, 2006, the Dickson County juvenile court judge issued a show cause order against Cordelia Ream. The order recited that Ms. Ream had "failed to have her son in court on October 25, 2006, as ordered by this court on October 11, 2006," and commanded Ms. Ream to appear to show cause why she should not be held in contempt for her failure to follow the court's order.[2] In an order entered on November 15, 2006, the judge appointed an attorney to represent Ms. Ream and reset the matter to be heard on November 22, 2006.

The matter was finally heard in juvenile court on December 6, 2006. There was no testimony; the eight-page transcript consists of a colloquy between several lawyers and the judge. Concerning Ms. Ream's contempt charge, the following exchange took place:

MR. DUGAN: Judge, can we revisit with Ms. Ream?

THE COURT: Yeah. You see now why I don't want to accept that? She takes the child to Mississippi and leaves the child down there.

MR. DUGAN: Your honor, I talked to the State, and here again, I know that ignorance is not an excuse, Judge, and I've already told my client that it was the intent of this Court to exonerate the integrity of this Court, and it's always that intent. And that this Court has the power to do that.

In taking everything into consideration, the State has agreed to - - I know that you need to send a message and we feel like 48 hours in jail is fair. She has a 16-month-old child that she is taking care of right now. We have the ability at this point in time to make arrangements for somebody to watch that baby, while she - - and we're asking the Court to accept 48 hours in jail. I think that's sufficient amount of punishment to send a message, not only to my client, but to the community in general that - -

THE COURT: Well, I'm not particularly concerned about the community in general. What concerns me is, she needs to have this child back here. Not only does she not bring the child back, she takes it to Mississippi.

MR. DUGAN: And the Court ordered her to go to Mississippi and bring the child up here, which she complied with. I think she understands that when a Court makes an order that it intends to enforce that order, and by all the judiciary means that they have at their disposal. I explained that to her.

_____

[2] Juvenile court contempt power is at Tenn. Code Ann. § 37-1-158. It has the same authority as circuit or chancery court. Sentence can be imposed of up to ten days confinement and a $50 fine. Tenn. Code. Ann. § 29-9-103.

3

THE COURT: I'll approve the agreement if it's two weekends.

MR. CLUCK: I will agree to that.

MR. DUGAN: She'll agree to two weekends.

THE COURT: All right. The court finds you to be in contempt, orders you to pay a $50 fine and also serve ten days in the Dickson County jail. This sentence will be suspended after serving four days. You will report to the Dickson County jail not later than 6:00 p.m. on Friday, the 8th day of December, to serve those four days. Do you understand?

MS. REAM: Yes, sir.

THE COURT: Do you have any questions?

MS. REAM: No, sir.

THE COURT: Okay.

MR. DUGAN: Thank you, Your Honor.

The judge entered a final order on December 6, 2006, finding Ms. Ream in contempt of court and imposing a fine of $50 and a sentence of 10 days, which would be suspended after Ms. Ream served four days.

Ms. Ream filed a notice of appeal to the circuit court on December 7, 2006. The proceedings subsequent to that have been set out above.

## II. Issues Presented

The appellant initially stated the issues as follows:

(1)Whether the trial court erred in holding the Appellant, Cordelia Ream, in contempt of Court and ordering her incarcerated for four (4) days lacking a determination that the appellant's failure to comply demonstrated a willful and/or wanton disregard for a lawful court order and with an intentional disregard for the Court's authority.
(2) Whether the sentence was excessive given the facts of the case.

After this Court raised the issue of the validity of the guilty plea and requested additional briefing, the appellant described the issue as:

Whether the trial court erred in accepting a guilty plea and holding the

4

Appellant Cordelia Ream in contempt of court and ordering her incarcerated for four (4) days lacking a determination that the Appellants plea of guilty was given voluntarily, knowingly and intelligently after the trial court's failure to inform the Appellant in open court and on the record of her rights and the consequences of the plea. If the acceptance of the guilty plea was in error was it plain error.

The State was initially concerned about the issue of the appellate process which, as set out above, was resolved consistent with the position of the State. The State also recognized the second issue as whether the juvenile judge acted within his discretion in imposing the four-day sentence after the guilty plea for contempt. The court requested the parties to brief the issue: was the guilty plea that was entered consistent with the constitutional standards and, if not, was this plain error?

The State defined the issue as:

Whether since Ream pleaded guilty to criminal contempt, which is an offense against the court rather than to a violation of a general criminal statute, the constitutional protections that attend the latter pleas are inapplicable to this case.

### III. Discussion

The State's position in this case, as set forth in its supplemental brief, fairly narrows the issue for the court to resolve. The State reviewed the law relating to court-mandated standards for the acceptance of guilty pleas from *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct.1709 (1969), through *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977) and *State v. Newsom*, 778 S.W.2d 34 (Tenn. 1989).[3] The State then straightforwardly asserts:

In this case, the juvenile court's colloquy with Ms. Ream and her counsel, printed above, did not substantially comply with the procedures required by *Mackey* and enshrined in Rule 11.[4] Thus, if this were an ordinary criminal case, the juvenile court's acceptance of the guilty plea would constitute

---

[3] These cases set out the standards required by the constitution for accepting guilty pleas, including the obligation of the judge to personally address the defendant and to insure that the defendant understands the panoply of specific constitutional rights he or she is waving by entering the guilty plea. Next the judge must insure that the defendant is intelligently and voluntarily waving these rights and understands the consequences of the plea in order for the plea to be consistent with constitutional standards. *See* Raybin, *Tennessee Criminal Practice and Procedure*, § 22.97-22.102 (1985) (2007 Supp.).

[4] Tenn. R. Crim. P. 11.

plain error[5] requiring reversal of the plea.
State's Brief, p. 9 (filed Aug. 1, 2008).

The State argues, however, that criminal contempt is not an "ordinary criminal case," and therefore the standards governing the entry of a guilty plea do not apply. It is true that a person facing a charge of criminal contempt does not have the right to a jury trial, but the person does have all the other rights of a criminal defendant. Furthermore, a conviction for criminal contempt is a criminal conviction. This Court disagrees with the assertion that a charge of criminal contempt is not an ordinary criminal case.

This Court and the Court of Criminal Appeals have specifically held that criminal contempt is a crime in the "ordinary sense" of the word:

> Criminal contempts are also crimes in the ordinary sense of the word, and one charged with criminal contempt is entitled to constitutional rights which attach to any criminal charge, e.g., the presumption of innocence and the right to require guilt to be shown beyond a reasonable doubt. *Strunk v. Lewis Coal Co.*, 547 S.W.2d 252 (Tenn. Crim. App. 1976).

*Crabtree v. Crabtree*, 716 S.W.2d 923, 925 (Tenn. Ct. App. 1986).

The Supreme Court of the United States has stated:

> "Criminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968), and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings," *Hicks v. Feiock*, 48 U.S. 624, 632, 108 S.Ct. 1423, 1429-1430, 99 L.Ed.2d 721 (1988).

*International Union v. Bagwell*, 512 U.S. 824, 826, 114 S.Ct. 2552, 2556 (1994). *See also Robinson v. Fulliton,* 140 S.W.3d 304, 312 (Tenn. Ct. App. 2003).

In *State v. McClintock,* 732 S.W.2d 268 (Tenn. 1987), the Supreme Court of Tennessee held that *Mackey* standards apply to guilty pleas in General Sessions Court and then stated that *"State*

---

[5] The State's concession that this would be plain error relieves the Court of the necessity of any extensive analysis of this issue. The criteria for plain error is set forth and discussed in a number of cases. *See, e.g., State v. Gomez*, 239 S.W.3d733, 737 (Tenn. 2007); *State v. Gann*, 251 S.W.3d 446, 458-459 (Tenn. Crim. App. 2007). The doctrine is applicable to guilty pleas. *State v. Miller*, 634 S.W.2d 615, 618 (Tenn. Crim. App. 1981) ("[B]oth *Boykin* and *Mackey* recognize the right of the reviewing court to grant relief for plain error . . .").

*v. Mackey, supra,* applies in **any** court accepting a guilty plea." *Id.* at 273 (emphasis in original.) This would include juvenile court.

## IV. Conclusion

Given the analysis above, this Court must conclude that the conviction for criminal contempt based on the guilty plea must be set aside. The conviction and sentence for criminal contempt are therefore vacated. This case is remanded back to the Juvenile Court of Dickson County for further proceedings consistent with this opinion. Nothing contained in this opinion would preclude the juvenile judge from the imposition of a lesser sentence if the appellant should plead guilty or be found guilty of criminal contempt.[6]

_____
Walter C. Kurtz, Senior Judge

---

[6] The Court observes that in determining the length of a sentence for a misdemeanor conviction the normal sentencing considerations apply. *State v. Troutman*, 979 S.W.2d 271, 273-74 (Tenn. 1998). A conviction for criminal contempt is a misdemeanor. *Robinson v. Fulliton*, 140 S.W.3d 304, 312 (Tenn. Ct. App. 2003). Although we are not now called to rule upon the reasonableness of the sentence which we now set aside, it would be somewhat unusual for a person to receive a sentence for not having their son in court that is twice the length of the normal 48-hour first offense DUI sentence. Of course, absent exigent circumstances, the imposition of a higher sentence by a judge after a successful appeal is impermissible. *State v. Russell*, 800 S.W.2d 169, 173-74 (Tenn. 1990).