# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 17, 2013 Session

## IN RE: ANNA L. J.

**Appeal from the Juvenile Court for Williamson County**
**No. 37304     Sharon Guffee, Judge**

---

**No. M2013-00561-COA-R3-JV - Filed March 20, 2014**

---

Husband and wife in dependent and neglect proceeding who were each held in criminal contempt for violating an order that they have no contact with other parties to the proceeding appeal their convictions, the sentences imposed, and other rulings of the trial court. We affirm the holding that the husband was in contempt, vacate the sentence imposed and remand the case for resentencing. We affirm the holding that the wife was in indirect contempt and the sentence imposed; we reverse the holding that wife was in direct contempt. In all other respects we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part and Reversed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined. FRANK G. CLEMENT, JR., J., filed a concurring opinion.

Brenda Rhoton Clark, Nashville, Tennessee, for the appellants, Robert H. Jackson and Sabrina S. Jackson.

William P. Holloway and Michael T. Fort, Franklin, Tennessee, for the appellees, Dennis Johnson and Wanda Johnson.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

On October 18, 2011 Robert and Sabrina Jackson filed a petition in Williamson County Juvenile Court to declare Anna Johnson ("Anna"), the daughter of Dennis and Wanda Johnson, dependent and neglected. The Jacksons asked the court to remove Anna from the Johnsons' home and place her in their care pending a hearing on the petition. A

preliminary hearing was begun on October 21, in the course of which the court appointed a Guardian ad Litem, referred the matter to the Court Appointed Special Advocate to conduct an investigation and make a report to the court, and reset the hearing for November 15; the court allowed that Anna would remain in her parents' home pending the later hearing. The November 15 hearing was continued and on December 14 the court entered an agreed order wherein the parties represented that they had settled the matter and had agreed "to certain requirements regarding the child," which were set forth in the order; the provision at issue in this appeal states:

> A reciprocal Restraining Order is in effect that [Jacksons and Johnsons], as well as their families, must not have any contact with each other. The minor children of both families are only allowed to have contact during school.

On June 18, 2012, the Johnsons filed a petition to hold Mr. Jackson in criminal contempt of court, alleging that he had violated the "no contact" provision of the agreed order on 183 occasions; on October 3 the Johnsons filed a petition for criminal contempt against Ms. Jackson alleging that she violated the "no contact" provision of the agreed order on June 18. On November 6 Mr. and Ms. Jackson filed answers to the contempt petitions along with counter-petitions seeking to have the Johnsons held in criminal contempt for alleged violations of the December 14, 2011 order. On December 4 Mr. Jackson filed a motion to continue a hearing on the Johnsons' petition against him which had been set for January 25, 2013; as grounds Mr. Jackson stated that he had been indicted on charges related to the events covered by the contempt charges[1] and that a continuance was needed in order that his counsel could adequately and competently defend him on the contempt charges. The motion was denied.

A hearing was held on the contempt petitions which had been filed against the Jacksons on January 25, 2013.[2] At the conclusion of the testimony the court found Mr. Jackson guilty of four counts of criminal contempt, fined him $50.00, and sentenced him to ten days in jail on each count, with the jail sentences to run consecutively. The court found Ms. Jackson guilty of one count of criminal contempt, fined her $50.00, and sentenced her

---

[1] Mr. Jackson had been indicted for aggravated stalking, coercion of a witness and contributing to the delinquency of a child.

[2] There were several matters pending before the court at the time of the hearing, including the Jacksons' counter-petitions against the Johnsons; following a discussion between the court and counsel, the court ruled that the Jacksons' petitions should have been filed as separate petitions rather than counter-petitions and would not be heard. That ruling is not an issue on appeal.

to ten days in jail.[3]  As court was adjourning and the parties were leaving the courtroom, the court held Ms. Jackson in direct contempt and sentenced her to an additional ten days in jail; the court ordered that she begin serving the sentence immediately.[4]  On January 31 Ms. Jackson moved the court to suspend her sentence for direct contempt and/or to reinstate her bond; the court denied the motion.  The Jacksons appeal.

## DISCUSSION

### I. MOTION TO CONTINUE

Mr. Jackson contends that the court erred in denying his request for a continuance of the contempt proceeding because he could not "adequately and competently defend himself" in the contempt proceeding until the matters for which he had been indicted were resolved.

The decision to grant or deny a motion for a continuance is within the discretion of the trial court.  *Freeman Indus. LLC v. Eastman Chem. Co.*, 227 S.W.3d 561, 565 (Tenn. Ct. App. 2006).  The trial court's decision will not be disturbed on appeal unless the record shows an abuse of discretion.  *Burks v. Spurlin*, No. M2006-00122-COA-R3-CV, 2007 WL 1341769 (Tenn. Ct. App. May 7, 2007).  A discretionary decision will be set aside only when the deciding court applied incorrect legal standards, reached an illogical conclusion, decided the case on a clearly erroneous assessment of the evidence, or employed reasoning that will cause injustice to the complaining party.  *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

Mr. Jackson does not contend that the court applied an incorrect legal standard, reached an illogical conclusion, or that the court based its decision on a clearly erroneous assessment of the evidence; rather he asserts that he was "unduly prejudiced by the procedure employed by the Juvenile Court."

The motion for continuance stated the following ground:

> On November 16, 2012, [Mr. Jackson] was arrested at his home and served with a Grand Jury indictment. . . . Every count alleged against him in that indictment is covered in some way in [the Johnson's] Petition for Criminal Contempt against Mr. Jackson.  Likewise, the facts alleged in the indictment

---

[3]  The Jacksons' attorney moved the court to stay the execution of their sentences; the court granted the motion and set a $1,500.00 bond for Mr. Jackson and a $500.00 bond for Ms. Jackson.

[4]  On February 4 the court entered an order incorporating its rulings from the bench.

also have bearing on the Jackson's Counter Petitions for Criminal Contempt against [the Johnsons] resulting in the Jackson's inability to adequately present their case against the Johnsons. Counsel cannot adequately and competently defend Mr. Jackson or prosecute the contempts against the Johnsons until the criminal matter is resolved against Mr. Jackson.

In his brief on appeal, he asserts that as a result of the denial of the continuance:

> At that hearing, Mr. Jackson had to make the election to remain silent and allow untruthful testimony to be introduced to the Court in support of the Petition for Criminal Contempt against him or testify knowing that his testimony could be admissible in the criminal matter pending against him. His witness and daughter, Kem Jackson, who was also arrested and served with a Grand Jury indictment pleaded the Fifth and did not provide any testimony as to the June 5, 2012 incident with Anna Johnson. Her refusal to testify prejudiced Mr. Jackson's ability to defend himself.

Mr. Jackson has failed to show that the court abused its discretion in denying his motion for a continuance. The fact that the conduct alleged in the indictment had some bearing on the subject matter of the criminal contempt proceeding being prosecuted by the Johnsons does not, in and of itself, show how Mr. Jackson's counsel could not "adequately and competently" defend him or how the denial of the continuance would cause him an injustice. Similarly, the fact that the contempt proceeding occurred before the criminal prosecution does not support a holding that his counsel could not defend the contempt proceeding or that the denial of the continuance caused him an injustice in any other regard.[5]

We affirm the denial of the motion for a continuance.

---

[5] Mr. Jackson does not specifically allege that his Fifth Amendment privilege against self-incrimination was violated by the denial of the continuance and we fail to see how he could make such a claim. In *Rachels v. Steele*, 633 S.W.2d 473 (Tenn. Ct. App. 1981), a defendant in a civil proceeding asserted that the trial court abused its discretion in denying her request for a stay of proceedings in light of a pending IRS criminal investigation; after discussing at length the contention that without a stay of the action the defendant was facing "compulsory self-incrimination", we affirmed the trial court, rejecting the argument that proceeding in the civil matter forced the defendant to abandon her Fifth Amendment privilege against self-incrimination. Mr. Jackson was examined by the court and confirmed that his decision to testify was made knowingly, voluntarily and with the advice of his counsel in both cases; he then proceeded to testify. Similarly, we fail to see how the fact that Mr. Jackson's daughter, a witness in the contempt proceeding, asserted her Fifth Amendment privilege and did not testify would support a holding that the trial court erred in denying Mr. Jackson a continuance.

## II. CRIMINAL CONTEMPT

"An act of contempt is a willful or intentional act that offends the court and its administration of justice." *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000).[6]  A criminal contempt proceeding is punitive in nature and its primary purpose is to vindicate the court's authority. *Simmons v. Simmons*, No. M2007-01582-COA-R3-CV, 2009 WL 837725 (Tenn. Ct. App. 2009) (citing *Thigpen v. Thigpen*, 874 S.W.2d 51 (Tenn. Ct. App. 1993)).  The Tennessee Supreme Court has described such a proceeding as "sui generis—neither a civil action nor a criminal prosecution as ordinarily understood, nor a criminal prosecution within the Sixth Amendment of the United States Constitution." *Bowdon v. Bowdon*, 278 S.W.2d 670, 672 (Tenn. 1955).  As we explained in *Brown v. Latham*:

> Although criminal contempt is a crime, for constitutional purposes, it is not the same as a violation of the criminal law.  A defendant committing an act that is both contemptuous and a violation of the criminal law may be punished for both without violating his right to plead former jeopardy.  The proceeding in contempt is for an offense against the court as an organ of public justice, and not for a violation of the criminal law. . . . Thus, a defendant may be jailed for criminal contempt without a trial by jury, but the same defendant may demand a jury trial in a charge of violating a criminal statute if the statute provides that incarceration is one of the choices for punishment.

Nos. 01-A-01-9401-CV00008, 01-A-01-9402-PB00061, 1994 WL 570102, at *2 (Tenn. Ct. App. 1994) (citations and quotations omitted).  As pertinent to the issues involved in this case, our Supreme Court noted in *State v. Maddux*:

> [T]here are two species of contempt, direct and indirect, which differ . . . in the minimal procedures that will satisfy the requirements of due process in the case of each.  Direct contempt is based upon acts committed in the presence of the court, and may be punished summarily.  Indirect contempt is based upon acts not committed in the presence of the court, and may be punished only after the offender has been given notice, and the opportunity to respond to the charges at a hearing.

*State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978).

---

[6] An act of contempt may be either civil or criminal in nature, *Reed v. Hamilton*, 39 S.W.3d 115, 118 (Tenn. Ct. App. 2000); determining whether a punishment for contempt is civil or criminal depends on the character and the purpose of the sanction imposed. *Robinson v. Fulliton*, 140 S.W.3d 304, 309 (Tenn. Ct. App. 2003).

A person charged with criminal contempt is presumed innocent and may not be found to be in criminal contempt absent proof beyond a reasonable doubt. *Thigpen*, 874 S.W.2d at 53. Before a court can hold a person in contempt for violating a court order, the court must find that: the order alleged to have been violated is lawful; the order is clear, specific, and unambiguous; the person disobeyed or resisted the order; and the person's violation was "willful." *Konvalinka*, 249 S.W.3d at 354–55. A person found guilty of criminal contempt can be fined $50.00, imprisoned up to ten days, or both. Tenn. Code Ann. § 29-9-103.

On appeal "[i]ndividuals convicted of criminal contempt lose their presumption of innocence and bear the burden of overcoming their presumption of guilt." *Thigpen*, 874 S.W.2d at 53 (citing *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964) and *Nuclear Fuel Servs. v. Local No. 3-677, Oil Chem., & Atomic Workers Int'l Union*, 719 S.W.2d 550, 552 (Tenn. Crim. App. 1986)). We review the evidence in a light most favorable to the prosecution and will only reverse a criminal contempt conviction when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt. *Thigpen*, 874 S.W.2d at 53; Tenn. R. App. P. 13(e).

### A. MR. JACKSON

### 1. Finding of Guilt

The court found Mr. Jackson guilty of four counts of contempt, based on events which occurred on May 28, June 1, June 3, and June 5, 2012. Mr. Jackson does not contest the sufficiency of the evidence to support the court's finding; rather, he contends that the court erred in finding him guilty because his actions were not willful.

In *Konvalinka*, our Supreme Court discussed willfulness of conduct in the context of contempt as follows:

> [W]illful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

*Konvalinka*, 249 S.W.3d at 357 (citations omitted).

In holding Mr. Jackson in contempt, the trial court made the following specific findings:

6

As to the May 28th and June 1st contact, I find that the initial contact was made by Elizabeth Johnson, but Mr. Jackson did nothing to terminate the contact, and by his own admission, participated in an extended conversation with the child.

Mr. Jackson testified he knew of the Court's restraining order, and for some reason that is simply implausible to this Court, he feels that just because he didn't initiate contact, he had the right to ongoing communication. It is completely irrelevant to the Court what the conversation consisted of. Mr. Jackson should have never responded. Emergencies are handled by the police.

As to June 3rd contact, the Court finds Mr. Jackson initiated contact with Elizabeth Johnson, and she responded. The Court simply does not find Mr. Jackson's testimony credible, that it was accidental.

As to the June 5th contact with Anna Johnson, the Court finds him guilty beyond a reasonable doubt by crediting the testimony of Anna Johnson, and the defendant witness, Allena Every, that Mr. Jackson intentionally sought out Anna, had extended conversation with her, offered her to stay at his home, if there was nowhere safe for her to go.

He told Allena he saw Anna's ID in the car, so he knew she was there. And yet, he did not leave. He knew she had run away and threatened to call the police, if she didn't talk to him. He also told Allena he knew he wasn't supposed to talk to Anna because of the Court Order. If that's not willful, I don't know what is. He admitted to being there and talking at length with the child.

The evidence supports the finding that Mr. Jackson's actions were willful. Mr. Jackson testified that he received text messages from Elizabeth Johnson on May 28 and June 1 and that he responded to those messages. We agree with the court below that the fact that he did not initiate the contact is irrelevant to the determination of willfulness; Mr. Jackson made the determination to respond and to persist in the contact. With respect to the contact on June 3, the trial court found Mr. Jackson's explanation not to be credible; in his brief, Mr. Jackson points to testimony which he contends shows that the contact was accidental. We give "considerable deference" and "great weight" to the factual findings made by the trial court that rest on determinations of credibility. *See Cutler-Hammer v. Crabtree*, 54 S.W.3d 748, 753 (Tenn. 2001); *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996). As to the June 5 incident, Mr. Jackson testified that he drove to Nashville looking for Anna and that, when he found her at her friend's apartment, he spoke with her at length in his vehicle and

7

in the friend's apartment. Mr. Jackson's testimony with respect to this incident likewise satisfies the standard of willfulness set forth in *Konvalinka*. We affirm the holding that Mr. Jackson was in criminal contempt.[7]

### 2. Sentencing

Mr. Jackson was sentenced to ten days in jail, to be served consecutively, and fined $50.00 for each of count of contempt. He contends that sentencing him to the maximum jail time for each count was excessive and the court should have imposed concurrent rather than consecutive sentences.

The standard we apply in reviewing sentencing decisions, including the determination to impose consecutive sentences, is abuse of discretion, accompanied by a presumption of reasonableness. *See State v. Bise*, 380 S.W.3d 682 (Tenn. 2012); *State v. Pollard*, ___ S.W. 3d ___, 2013 WL 6732667 (Tenn. Dec. 20, 2013). Where the trial court states in the record the reasons it has imposed a particular sentence, we are able to afford the sentencing decision the presumption of reasonableness; where it fails to do so, we may conduct a more detailed review of the record and uphold the decision "so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." *Bise*, 380 S.W.3d at 706; *see also Pollard*, 2013 WL 6732667, at *9.[8]

In imposing the sentence, the court stated:

THE COURT: As to sentencing for Mr. Jackson, I do find that the events that occurred on May 28th and June 1st are all part of a continuing event and not separate actions. So therefore, it constitutes one count. One ten-day sentence for May 28th; a ten-day sentence for June 1st. And I also sentence him to ten days for the June 5th occurrence. Order him to pay a $50 fine for each of

_____

[7] We reject Mr. Jackson's argument, based on *Bowers v. Bowers*, No. M2010-00311-COA-R3-CV, 2011 WL 1344258 (Tenn. Ct. App. April 7, 2011), that the trial court should have included in its written order findings that Mr. Jackson had the ability to comply with the order and that his conduct was willful. In *Bowers*, this court reversed an order holding a Father in criminal contempt because the trial court did not make the requisite finding in its order that the Father had the ability to pay; we rejected the argument that statements made by the court at the hearing constituted the requisite findings. In this case, however, the written order attached and incorporated a transcript of the court's ruling; this is sufficient. Moreover, the order of which Mr. Jackson was found in contempt was a "no contact" order and, unlike a finding of contempt in a delinquent child support proceeding, the only "ability" Mr. Jackson needed in order to comply with the order was not to contact the Johnson family.

[8] Tenn. R. Crim. P. 32(c)(1) requires the court to specify the reasons it has imposed concurrent or consecutive sentences.

those days, May 28th, June 1st, June 5th, and order that the sentence be served consecutively for a total of 30 days.

* * *

MS. CLARK: May it please the Court, if I could ask for a motion for a stay.

MR. HOLLOWAY: June 3rd, is that sentence going to be just suspended or sentencing him to zero on that one? I had the 28th, the 1st, and the 5th were Anna, and the June 3rd was the initial contact from Mr. Jackson.

THE COURT: I didn't add that. You're absolutely right. That's an additional ten days for a total of 40. I'm sorry, Mr. Holloway. Math is not my forte.

Tenn. Code Ann. § 29-9-103 provides that the punishment for contempt may be a fine to the maximum amount of $50.00, imprisonment to a maximum of ten days, or both. Statutory authority for the court to impose consecutive sentences is set forth at Tenn. Code Ann. 40-35-115(b)(7):

> (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
> * * *
> (7) The defendant is sentenced for criminal contempt.

While the fact that Mr. Jackson was found guilty of four counts of criminal contempt establishes a basis for imposing consecutive sentences, it is not apparent from the record why the court imposed the maximum sentence for each count of contempt. In the absence of an explanation from the court of why it imposed the maximum sentence for each count and for the sentences to be served consecutively, in our review we cannot afford the sentencing decision a presumption of reasonableness or conclude that the court did not abuse its discretion.

Mr. Jackson requests that we suspend or substantially reduce the sentence, that the sentences be ordered to run concurrently, and that we order that he be allowed to serve his time on weekends. As we consider his request, we are mindful of the substantial discretion vested in the trial courts in punishing contempts of court; we are equally mindful, as instructed by *In Re Sneed*, that "the overall length of the sentence must be 'justly deserved in relation to the seriousness of the offense[s]' and 'no greater than that deserved' under the circumstances." *In re Sneed*, 302 S.W.3d, 825 at 828–29 (internal citations omitted). Appellate courts have authority to modify a sentence for criminal contempt when it appears to be excessive. *Thigpen*, 874 S.W.2d at 54; *Simpkins v. Simpkins*, 374 S.W.3d 413, 425 (Tenn. Ct. App. 2012). We have determined, however, under the unique facts and circumstances of this case, that it is appropriate to vacate the sentence imposed on Mr. Jackson and remand the case for resentencing. Upon resentencing, the court shall state its

reasons for imposing concurrent or consecutive sentences and why the overall length of sentence (the sum of the days sentenced for each count of contempt) was chosen.

## B. MS. JACKSON

On October 3, 2012, the Johnsons filed a petition seeking to hold Ms. Jackson in criminal contempt alleging that, following a court hearing on June 18, Ms. Jackson verbally confronted one of the Johnson children, Elizabeth; at the January 25 hearing, the court found Ms. Jackson guilty. As the parties were leaving the January 25 hearing the court also held Ms. Jackson in contempt for conduct directed toward the Johnsons.

### 1. Indirect contempt as alleged in the petition

In its ruling from the bench holding Ms. Jackson in contempt for the conduct alleged in the petition, the trial court stated:

> As to Defendant, Sabrina Jackson, I find her guilty of the one count on June 18th, and credit the testimony of Libby Johnson, that Ms. Jackson said, you just put your sister in the grave, and also that the officers surrounded them. I credit the testimony of the eye witness, Ms. Herr, that corroborates Libby's testimony. I agree with Mr. Holloway that it is absolutely ridiculous, the testimony that we heard from Ms. Jackson, and I don't find her to be a credible witness.

In her brief on appeal, Ms. Jackson cites her testimony at the hearing and argues that the evidence is insufficient to support the court's finding of criminal contempt.

Ms. Jackson testified that she did not make the statement attributed to her on June 18; other witnesses testified that she did. In resolving this conflict in testimony, the court determined that Ms. Jackson was not credible and the witnesses were. As noted earlier, we are to give substantial deference to a trial court's factual findings based on credibility. *See Cutler-Hammer*, 54 S.W.3d at 753; *Randolph*, 937 S.W.2d at 819. Accordingly, we affirm the trial court's finding that Ms. Jackson was in contempt for violating the December 14, 2011 order.[9]

---

[9] For the reasons stated in footnote 7, we reject Ms. Jackson's argument that the court should have included in its written order findings that Ms. Jackson had the ability to comply with the order and that her conduct was willful.

Ms. Jackson contends in the alternative that the sentence imposed was excessive and should be reduced or suspended; she does not set forth reasons for her contention. The sentence imposed was within the statutory authority of the court, *see* Tenn. Code Ann. § 29-9-103, and we discern no abuse of discretion on the part of the trial court in this regard.

## 2. Direct Contempt

On January 25, 2013, after court adjourned and as the parties were leaving the courtroom, the court summarily held Ms. Jackson in contempt of court, sentenced her to ten days, and ordered that she begin serving the sentence immediately. Ms. Jackson contends that the conduct for which she was held in direct contempt was not witnessed by the court and, consequently, that "there should have been notice of the charges and a hearing by an independent judge."

The transcript of the January 25 proceeding shows the following colloquy took place after court adjourned:

> MR. PLUMMER [Anna's Guardian ad litem]: Your Honor - -
> MS. CLARK [the Jacksons' attorney]: Excuse me, Your Honor - -
> MR. PLUMMER: Please - - could you ask Ms. Jackson to come back in here, please? She's here. She's walking past the Johnsons; and she's giving them a look and holding her hands up to her. She hasn't learned a thing.
> MS. CLARK: Well - - and he said, we like it.
> MR. PLUMMER: Well, she went - -
> MS. JACKSON: I didn't say a word. I just held up my hands.
> MS. CLARK: I watched her. She - -
> MR. FORT [the Johnsons' attorney]: Your Honor, exactly - - exactly what - - in the presence of the Court during a proceeding.
> THE COURT: Ten more days - -
> MS. CLARK: Your Honor - -
> THE COURT: - - to Ms. Jackson for contempt in the open presence of the Court.
> MR. FORT: Your Honor, I request there be no bond for that.
> THE COURT: She'll serve it right now.

As noted earlier, "[d]irect contempt is based upon acts committed in the presence of the court, and may be punished summarily." *Maddux*, 571 S.W.2d at 821. The colloquy shows that the Guardian ad Litem reported to the court that Ms. Jackson while exiting the courtroom raised her arms as she walked past the Johnsons and gave them some sort of look; there is nothing to indicate that the court saw the conduct which led to Ms. Jackson's being held in contempt. The mere fact that the alleged conduct occurred in the same room as the

11

judge is not sufficient to deprive Ms. Jackson of her due process rights to notice of the conduct alleged to constitute the contempt and opportunity for a hearing on that charge. This is particularly true where the holding of contempt was based on the unsworn and unchallenged statement of Mr. Plummer. *See Maddux*, 571 S.W.2d at 821 (noting that the minimum due process requirements of notice and opportunity to be heard are not required in direct contempt actions, but are required in indirect contempt actions). Moreover, the court did not certify that the court saw the conduct, as required by Tenn. R. Crim. P. 42(a). For these reasons, we must reverse the holding, including the sentence imposed.

## III. OTHER ISSUES

### A. PAMELA HERR AS A REBUTTAL WITNESS

Max Herr, a witness who had been subpoenaed to testify by the Jacksons, was ill and unable to appear at the January 25 hearing; his mother, Pamela Herr, appeared to advise the court of his condition. After three witnesses had testified and with the assistance of Pamela Herr, Max' testimony was taken by phone. After the Jacksons completed their proof, Ms. Herr was called to testify on behalf of the Johnsons as a rebuttal witness. The Jacksons objected to her testifying because she had been present in the courtroom throughout the proceedings; the court overruled the objection. On appeal, the Jacksons contend that allowing her to testify violated the rule of sequestration at Tenn. R. Evid. 615.[10] They argue that the Johnsons' counsel was not "genuinely surprised" by the need for a rebuttal witness and that Ms. Jackson was prejudiced by Ms. Herr's testimony because the court relied upon it in corroborating the testimony of Elizabeth Jackson, the only witness to the incident which led to the finding of contempt.

---

[10] Tenn. R. Evid. 615 states:

At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before opening statements. The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

12

The trial court has discretion as to whether and how to apply Rule 615 and in determining whether the Rule has been violated. *Robinson v. State of Tenn.*, 340 F. Supp. 82, (1972). Allowance or disallowance of testimony by someone who has violated the rule is likewise a matter of the trial court's discretion. *Ezell v. State*, 413 S.W. 2d 678 (Tenn. 1967). Accordingly, we apply the abuse of discretion standard in reviewing the decision to allow Ms. Herr to testify. Applying these standards, the record does not support a determination that the court abused its discretion in allowing Ms. Herr to testify.

In their brief on appeal, the Johnsons state that they did not become aware of Sabrina Jackson's theory relative to the event on June 18—that she did not make the remark to Elizabeth Johnson but made a similar statement to her husband—until Ms. Jackson testified at the January 25 hearing.[11] Giving context to counsel's decision to call her as a rebuttal

---

[11] The petition for contempt alleged with respect to the June 18 incident that:

3. On June 18, 2012, the parties attended a final hearing on the Petition for Dependency and Neglect filed in this matter. During a break and prior to the conclusion of the case, with blatant disregard for this Court's prior orders and the Court's authority, Sabrina Jackson, approached the minor child Elizabeth Johnson after her testimony and stated:

"I hope you know you killed your sister."

According to witnesses, including a Williamson County Sheriff's Department employee, Ms. Jackson made this statement to the child more than one time.

In her Answer, Ms. Jackson responded: "Sabrina S. Jackson admits that she attended a motion and judicial review hearing on the Petition for Dependency and Neglect filed in this matter. Mrs. Jackson denies the remainder pf paragraph 3." At the January 25 hearing, Ms. Jackson testified as follows relative to the June 18 incident:

We, as the petitioners, Bob and I, and you [the Jacksons' counsel]. And we had been discussing the possibility of a settlement. And I was a little heated. We were the only ones in the courtroom. Everyone else had left the courtroom. I did not believe that it was to Anna's best interest to settle. I didn't believe that that would keep Anna safe. You left prior to me. Bob and I continued our conversation, and we proceeded to exit the courtroom.

At that time, I believed the courtroom and the lobby would be totally clear since we had lingered to talk. I was talking to Bob about how I felt, and he put his two hands on my shoulders to try and calm me down. As I was exiting the door, I swung the door open. My husband had his hands on my shoulders and I took a step out of the courtroom. As I was swinging the doors open, I said to my husband - - and I was angry. My statement was, y'all are putting Anna in her grave. And I was referring to Bob and you. I disagreed with how things were proceeding.

witness, in the course of her examination Ms. Herr testified to the circumstances that led to her being called as a witness:

> Q. So have you just been sitting here in the courtroom, listening to the proof, and all of a sudden, you let Counsel know that you were a witness?
> MR. HOLLOWAY: Objection to relevance.
> THE COURT: Overruled.
> BY MS. CLARK:
> Q. Have you been sitting in here in the courtroom, and when you heard the testimony, is that when you let Counsel know that you were a witness to that conversation?
> A. I let Mr. Johnson know.
> Q. When did you tell Mr. Johnson?
> A. I think when these two were telling their story.
> Q. Is it your testimony that you have not told either Mr. Holloway or Mr. Fort about what you saw before you testified?
> A. No, I did.
> Q. And when did you tell them?
> A. I don't know.  A half hour ago.
> MS.  CLARK: Thank you.
> ***
> QUESTIONS BY MR. PLUMMER:
> Q. Did you tell these attorneys during their testimony that this is what happened, or did you tell them somewhere outside of this courtroom?
> A. No, during.
> Q. While court was going on?
> A. Yes.
> MR. PLUMMER: That's all.

The testimony of Ms. Herr supports counsel's statement that counsel did not know that she was a witness to the event and could rebut the testimony of Ms. Jackson until one half hour before she was called; this was after she had heard the testimony of the other witnesses. Under these circumstances, it was not an abuse of discretion for the court to allow her to testify as a rebuttal witness.

---

And I took a step into the lobby after swinging the door open, and he proceeded to walk me to the front door.  I did not hesitate, did not stop, did not look at Libby directly. . . .

**B. OBJECTION TO INTRODUCTION OF TEXT MESSAGES**

In the course of his testimony, Mr. Jackson sought to introduce an exhibit he had created which consisted of a compilation of text messages between Elizabeth Johnson and himself on May 28, 2012. The court sustained an objection to the introduction of the exhibit on the grounds that it was not properly authenticated. In reliance on *Dockery v. Dockery*, No. E2009-01059-COA-R3-CV, 2009 WL 3486662 (Tenn. Ct. App. Oct. 29, 2009), Mr. Jackson asserts that the proposed exhibit was authenticated as required by Tenn. R. Evid. 901(a) and that the trial court erred in excluding it.

Generally, questions concerning the admissibility of evidence rest within the sound discretion of the trial court and this Court will not interfere with the exercise of this discretion in the absence of a clear showing of abuse appearing on the face of the record. *See State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993); *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)). "[D]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." Martha S. Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking*, 2 J. App. Prac. & Process 47, 58 (2000) (citations and internal quotation marks omitted).

Tenn. R. Evid. 901(a) states:

(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims.

Subsection (a) makes the trial court the arbiter of authentication issues. *See* Tenn. R. Evid. 901, cmt. (a).

Mr. Jackson testified that he had two numbers by which he could send and receive text messages; he had more than one number because he lived in the country and that "the cell phone service is erratic" and that he "couldn't get texts reliably." He testified that he established one number, which he referred to as the "google voice text number," in order to send and receive text messages from his computer as well as his cell phone. The testimony by which Mr. Jackson sought to establish the authenticity of the exhibit was the following:

15

Q. Mr. Jackson, can you identify what the document that was just handed to you is?

A. Yes, this is - - I've cross-matched the charges, the accounts, against the actual text transmissions between Libby and myself on 5/28. And since I use Google Voice, it keeps a log of your texts. And because of this court hearing starting sometime ago, I've started, also, logging all other texts that go to the other number. I have programs that do that.

It's not just because of court. Because of business, I make arrangements. I make deals. I make contracts. And sometimes, now, we're doing it by texts. So I need to be able to recall it.

Q. Okay. Is this a document that your computer-generated program put together, or did you type this out, listening to the text?

A. No. This is strictly all cut and paste from what the history is. I changed the color so it would be easier for the Court to understand, you know, what texts we're offering here that isn't in the count that helps explain the conversation.

Q. So when you talk about cut and paste, you took the portion of the texts that relate to the May 28th, 2012, text exchange; you cut that out?

A. Uh-huh.

Q. And that is what this document is?

A. Yes, ma'am.

The court then asked if the underlying records had been subpoenaed and was advised that they had not; the court sustained the objection, expressing the following reservations:

THE COURT: Well, certainly, Mr. Jackson can testify as to any conversations that he remembers from these text conversations. But if you want to introduce this as a piece of evidence, I don't think there's any way to authenticate it unless it was from the Google records, as they have introduced that's been authenticated from the provider.

MS. CLARK: Well, Your Honor, I would submit we don't have to submit records from Google. I don't know that they keep them there, but they're certainly on Mr. Jackson's computer.

THE COURT: Ms. Clark, what's to say that this hasn't been made up? There's nothing - - there's no authenticity about this, other than that this could have been conversations that Mr. Jackson just made up.[12]

---

[12] After considering counsel's argument that the court's concern was a "question of credibility" of Mr. Jackson, the court allowed that Mr. Jackson could testify regarding the events:

16

The holding in *Dockery* is not dispositive of the issue presented in this case. In *Dockery* a wife sought to have her husband held in criminal contempt for violating an order of protection. During the trial, Ms. Lowe, a witness called on behalf of Ms. Dockery, testified that on two occasions Mr. Dockery contacted her on MySpace[13] and asked Ms. Lowe to have Ms. Dockery contact him. When Ms. Dockery sought to introduce printouts of the conversations into evidence, Mr. Dockery objected on the ground that the printouts were not properly authenticated in accordance with Tenn. R. Evid. 901; the court overruled the objection. On appeal, we affirmed the holding that Ms. Lowe's testimony that she had printed the text messages directly from her computer and that the copies accurately depicted the conversation was sufficient authentication to allow the admission of the records into evidence. *Dockery*, 2009 WL 3486662, at *7.

Unlike the proposed exhibit in *Dockery*, which was a printout of messages directly from the witness' computer, the exhibit Mr. Jackson proposed to introduce was compiled—in part for purposes of trial—from records created and maintained by Google; the information contained on the proposed exhibit was specifically chosen by him to be included. There was no guarantee that the information contained on the exhibit was complete or, indeed, what it purported to be. The proposed exhibit was introduced for identification purposes and, having viewed it, we share the trial court's reservations.

Mr. Jackson has failed to show that the trial court abused its discretion in excluding the compilation of text messages; consequently, we affirm the trial court.[14]

## IV. CONCLUSION

For the foregoing reasons we affirm the holding that Mr. Jackson was in criminal contempt of court, vacate the sentence imposed and remand the case for resentencing; we

---

THE COURT: Ms. Clark, you can ask your client anything you want about the events that happened on this date. You can ask him anything that he recalls about it whatsoever.

We do not agree that the court's concern was a credibility determination. The requirement that an exhibit be authenticated is a condition precedent to the admissibility of evidence, unlike a credibility determination which is a consideration of the weight to be afforded testimony which has already been admitted as evidence.

[13] MySpace is a social networking website where individuals can communicate with each other by posting messages. *See* http://mashable.com/category/myspace.

[14] In any event, the court allowed Mr. Jackson to testify about the events covered in the text messages and Mr. Jackson makes no complaint on appeal that he was denied the opportunity to testify regarding those matters.

affirm the holding that Ms. Jackson was in indirect contempt and the sentence imposed for that offense; we reverse the holding that she was in direct contempt and the sentence imposed for that offense.  In all other respects we affirm the judgment of the trial court.


                                            _____

                                            RICHARD H. DINKINS, JUDGE