
IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 4, 2017

**TREVOR HOWELL v. KENNEDY SMITHWICK**

**Appeal from the Chancery Court for Anderson County**
**No. 14CH6820        M. Nichole Cantrell, Chancellor**

_____

**No. E2016-00628-COA-R3-CV**

_____

Mother has appealed the trial court's decisions regarding parenting time, criminal contempt, child support, and the child's surname. We have determined that the trial court erred in finding Mother in criminal contempt as to one of the three incidents at issue, in setting temporary child support, in failing to order Father to pay child support by wage assignment, and in ordering the child's surname to be changed to Father's surname. In all other respects, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, Reversed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and KENNY W. ARMSTRONG, JJ., joined.

Bruce T. Hill, Sevierville, Tennessee, for the appellant, Kennedy Smithwick.

Trevor Howell, Oak Ridge, Tennessee, appellee, pro se.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Trevor Howell ("Father") and Kennedy Smithwick ("Mother") are the parents of a child born in December 2014. The parents were no longer together at the time of the child's birth. Within a week of the birth, Father filed a petition to establish paternity and custody. On January 21, 2015, the parties submitted an agreed order pursuant to which Father would have parenting time every Wednesday for four hours and every Saturday for four hours.

After paternity was established, the parties attended mediation. On May 21, 2015, the trial court entered an agreed temporary parenting plan order pursuant to which Father would exercise parenting time every Wednesday from 11:00 a.m. until 6:00 p.m., every Friday from 3:30 p.m. until 7:00 p.m., every Saturday from 11:00 a.m. until 6:00 p.m., and every other Sunday from 10:00 a.m. until 6:00 p.m. The order provided for approved child care providers while the child was in the care of each parent. The parties also agreed that "Father shall pay child support in the amount of $300.00 per month to Mother" and that "this amount is correct as a deviation from the guidelines given Father's time with the child." The agreed order states that "this temporary parenting plan will be modified by agreement, mediation, or hearing upon Father obtaining different employment, Mother discontinuing breastfeeding, or October 1, 2015, whichever occurs first."

On December 3, 2015, Father filed a verified motion for criminal contempt against Mother alleging that she was in criminal contempt for violating the temporary parenting plan agreement entered on May 21, 2015. The details of this petition will be set forth as relevant in the analysis below. On December 9, 2015, the trial court entered a show cause order and notice of rights pursuant to Rule 42 of the Tennessee Rules of Criminal Procedure. Father filed an amended verified motion for contempt on December 16, 2015.

The case was heard on January 26, 2016. Father, Mother, Patricia Spraker (paternal grandmother), and Ashley McCarter (Father's girlfriend) testified. The court took the matter under advisement and then made a ruling from the bench, with findings of fact and conclusions of law, on January 27, 2016; the court entered its final order on February 23, 2016.

The February order includes a detailed analysis of the factors set forth in Tenn. Code Ann. § 36-6-106(a). The court reached the following relevant conclusions:

> 3. Breastfeeding does not prohibit Father's co-parenting time. The minor child is thirteen months old and has the ability to eat baby and solid food as well as drink milk from a sippy cup.
> 4. The Father is a good parent and shows a willingness to co-parent by testimony of witnesses and both parties. Co-parenting time with the Father, by law, should be maximized.
> 5. It is in the best interest of the minor child that the Father immediately have overnights with the child but that the extended periods of overnight be on a graduated plan.
> . . . .
> 7. The Mother committed three acts of criminal contempt by failing to comply with an order of this Court as it relates to visitation between the minor child and the Father. The Mother willfully and knowingly failed to comply with an order of this Court on three occasions by not allowing the

Father to have visitation with the minor child as contained in the Agreed Temporary Parenting Plan Order. . . . Mother shall pay for reasonable attorney fees for the contempt pending both attorneys submitting an affidavit of times.

8. The minor child's surname shall be changed to Howell . . . .

The trial court entered a new parenting plan giving Mother and Father equal parenting time and naming Mother the primary residential parent. The court established a transitional period, from January 29 through February 24, 2016, during which Father would begin to exercise more overnight parenting time. Then, as of February 24, 2016, the regular parenting schedule would be as follows:

> [T]he Mother shall have co-parenting time with the minor child every Monday at 6:00 p.m. until Wednesday at 6:00 p.m. and the Father shall have co-parenting time every Wednesday at 6:00 p.m. until Friday at 6:00 p.m. The parties shall alternate the following block: Friday at 6:00 p.m. until Monday at 6:00 p.m.

Based upon the child support guidelines, Father was required to pay Mother $139.00 per month in child support beginning on February 1, 2016. Mother was awarded a judgment in the amount of $300.00 in retroactive child support.

On March 15, 2016, the trial court entered an agreed amendment to its February 23, 2016 order stating that "each party shall be responsible for their own respective attorney fees on all issues, including, but not limited to, criminal contempt." This order was entered *nunc pro tunc* January 26, 2016, the date of the hearing.

On appeal, Mother raises a number of issues, which we summarize as follows: whether the trial court erred in (1) finding Mother in criminal contempt; (2) failing to adopt Mother's proposed parenting plan; (3) its calculation of temporary child support; (4) failing to require Father to pay child support by wage assignment; and (5) changing the child's surname to Father's surname.[1]

ANALYSIS

(1) Criminal contempt

Mother raises two main arguments on the issue of contempt: lack of notice and failure of proof beyond a reasonable doubt. We begin with notice.

A. Notice

---

[1] Father did not file a brief on appeal.

- 3 -

All courts have the power to punish for criminal contempt pursuant to Tenn. Code Ann. § 29-9-102(3) in cases of "willful disobedience or resistance of any . . . party . . . to any lawful writ, process, *order*, rule, decree, or command of such courts." (Emphasis added). Tennessee Rule of Criminal Procedure 42(b)(1) requires that a criminal contempt be prosecuted on notice, which shall:

    A. state the time and place of the hearing;
    B. allow the alleged contemner a reasonable time to prepare a defense; and
    C. state the essential facts constituting the criminal contempt charged and describe it as such.

In cases involving indirect contempt, which concern actions committed outside the presence of the court, adequate notice "must be given before the contempt hearing." *Fox v. Fox*, No. M2009-01884-COA-R3-CV, 2010 WL 4244356, at *6 (Tenn. Ct. App. Oct. 26, 2010); *see* TENN. R. CRIM. P. 42(b)(1).

Mother asserts that she was not properly served with the original or amended verified motion for criminal contempt because the motions were served on her attorney and not on her personally. Mother likewise argues that the court's show cause order and notice of Rule 42 rights was not served on her personally.[2] These arguments are without merit. Rule 49 of the Tennessee Rules of Criminal Procedure requires service upon "every other party" of written motions (other than ex parte motions) and court orders required by their terms to be served upon the parties. TENN. R. CRIM. P. 49 (a)(1). Rule 49 further provides: "When the law, these rules, or a court order requires or permits service to be made on a party represented by an attorney, the service shall be made on the attorney unless service on the party in person is required by law or is ordered by the court." TENN. R. CRIM. P. 49 (b)(1). The permissible methods of service include mailing a copy to the attorney's last known address. TENN. R. CRIM. P. 49(b)(2)(B). Thus, service upon Mother's attorney constitutes service upon Mother.

Mother further argues that the trial court failed to advise her of her rights prior to her testimony at the hearing, that the show cause order failed to give notice of the specific instances of contemptuous behavior, and that the order's erroneous mention of the Rules of Civil Procedure in the title is a fatal error. In the show cause order, which was served upon Mother through her attorney, the trial court put Mother on notice of the following:

    1. Each violation of the Orders of this Court subjects the Defendant to 10 days in jail and a fifty dollar ($50.00) fine.
    2. The Plaintiff seeks contempt sanctions for each failure listed in the

---

[2] Mother also suggests that her attorney was not served with the show cause order, but the certificate of service on the order states otherwise.

pleadings. These allegations must be proven by Plaintiff beyond a reasonable doubt to subject [Mother] to being found guilty of contempt.

3. You are entitled to bail throughout these proceedings.

If found guilty of contempt, the Court shall enter an Order setting the punishment for each violation so found.

Furthermore, the Defendant is put on notice that she has the following rights pursuant to Rule 42 of the Tennessee Rules of Criminal Procedure:

A. You have the right to be represented by counsel, and if you are unable to afford one, counsel shall be appointed for you.

B. You have the right to have guilt proven against you beyond a reasonable doubt with the burden of proof being on the Petitioner.

C. You have the right against self-incrimination, which includes the right to remain silent as to the allegations of criminal contempt filed against you.

D. You have the right to a presumption of innocence until such time as the allegations of guilt are proven beyond a reasonable doubt; and

E. You have all other rights afforded to any other individual charged with violation of a criminal statute except the right for a trial by jury.

Although the show cause order erroneously referenced the Rules of Civil Procedure in the title, the body of the order sets forth the pertinent provisions of Rule 42 of the Tennessee Rules of Criminal Procedure and gave Mother notice of her rights under Rule 42. At the hearing, Mother took advantage of the rights afforded to her under Rule 42 by invoking her Fifth Amendment right not to answer questions that might incriminate her. Moreover, although the order did not detail the specific acts of contempt alleged, the amended motion for contempt filed on December 16, 2015 and served on Mother through her attorney specifies the three incidents of contempt, as will be discussed below.

We find no merit in Mother's arguments that she did not receive adequate notice of the criminal contempt motion or the show cause order.

B. Proof beyond a reasonable doubt

Convictions for criminal contempt are punitive in nature, and "their primary purpose is to vindicate the court's authority." *Long v. McAllister-Long*, 221 S.W.3d 1, 12 (Tenn. Ct. App. 2006); *see also Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citing *Gunn v. S. Bell Tel. & Tel. Co.*, 296 S.W.2d 843, 844 (Tenn. 1956)). A person charged with criminal contempt enjoys a presumption of innocence and must be found guilty beyond a reasonable doubt. *Long*, 221 S.W.3d at 13 (citing *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996)). A person found guilty of criminal contempt may be imprisoned for up to ten days for each offense, fined $50, or both. Tenn. Code Ann. § 29-9-103; *Thigpen*, 874 S.W.2d at 53. Sanctions for criminal contempt are imposed for no

reason other than punishment, so a person imprisoned for contempt cannot win freedom by complying with the court's order. *Long*, 221 S.W.3d at 12-13 (citing *Robinson v. Fulliton*, 140 S.W.3d 304, 310 (Tenn. Ct. App. 2003)).

Once a person is convicted of criminal contempt, he or she loses the presumption of innocence and must overcome the presumption of guilt on appeal. *Thigpen*, 874 S.W.2d at 53. "'Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt.'" *Moody v. Hutchison*, 159 S.W.3d 15, 25 (Tenn. Ct. App. 2004) (quoting *Barber v. Chapman*, No. M2003-00378-COA-R3-CV, 2004 WL 343799, at *2 (Tenn. Ct. App. Feb. 23, 2004)).

There are three elements to criminal contempt: "'(1) a court order, (2) the defendant's violation of that order, and (3) proof that the defendant willfully violated that order.'" *Pruitt v. Pruitt*, 293 S.W.3d 537, 545 (Tenn. Ct. App. 2008) (quoting *Foster v. Foster*, No. M2006-01277-COA-R3-CV, 2007 WL 4530813, at *5 (Tenn. Ct. App. Dec. 20, 2007)). In the context of criminal contempt, willfulness requires that an act be "'done voluntarily and intentionally and with the specific intent to do something the law forbids.'" *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 357 (Tenn. 2008) (quoting *State v. Braden*, 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993)); *see also In re Carolina M.*, M2014-02133-COA-R3-CV, 2016 WL 6427853, at *5 (Tenn. Ct. App. Oct. 28, 2016) (stating that "[w]illfulness, in the context of criminal contempt, requires both (1) intentional conduct, and (2) a culpable state of mind").

The trial court found Mother guilty of three acts of criminal contempt alleged to have occurred on July 31, 2015, November 7, 2015, and November 18, 2015. With respect to November 7, 2015, Father made the following allegations in his amended motion for criminal contempt:

> Mother refused Father's visitation on November 7, 2015. The Mother advised Father that she would not allow him visitation on this date because she had plans. The Father had not agreed to forgo his visitation with the minor child nor had the Mother consulted him prior to her denial of the Father's visitation with the minor child. The Defendant willfully violated section 1 of the Agreed Temporary Parenting Plan Order on November 7, 2015.

At the hearing, Mother stated that she and her boyfriend went to the Dixie Stampede on November 7, 2015, a Saturday. She further testified:

> Q. And do you recall having a discussion about having plans with Mr.

- 6 -

Howell?

A. Yes.

Q. And he said what?

A. He said okay. And I told him you can get her another Sunday or throughout the week to make up the visit. He said okay.

Q. Did you have any reason to believe when Mr. Howell said okay that he really was not in agreement with that?

A. No, because I didn't think—he wasn't okay—he was okay with it at the time, but then when he found out what we were doing and who we were doing it with, then that's when he got mad about it, because I didn't tell him we had plans to go to Dixie Stampede. I just said, hey, we have plans on November 7th, and he said okay.

Q. So it wasn't until later that he then objected?

A. Right.

Father gave the following pertinent testimony:

Q. You had said you missed a visit because Ms. Smithwick told you that she had plans and really she was at Dixie Stampede with her boyfriend?

A. Right.

Q. Did you ever ask her what her plans were?

A. No.

Q. Going to Dixie Stampede is having plans.

A. Right.

Q. Did you ever say no?

A. Not that I can remember.

Q. Did you say anything?

A. I think I just said okay.

Q. So if you said okay, is that not agreeing?

A. Yes, it is.

Based upon the evidence that Father agreed for Mother to exercise parenting time on November 7, 2015, we conclude that the trial court erred in finding Mother in criminal contempt for deviating from the temporary parenting plan on that day.

The allegations regarding July 31, 2015 are that Mother willfully refused Father's visitation as follows:

Father advised Mother that his designee would be receiving the child for this visitation as allowed by the order. His designee and approved child care provider, Ashley McCarter, who had a valid driver's license, arrived at the designated time and place with proper equipment to transport the minor child. When Ms. McCarter arrived to pick up the child, not only was she

- 7 -

denied the ability to leave with the child, but Mother attempted to instigate an altercation with Ms. McCarter and the Defendant's mother, the maternal grandmother, vandalized Ms. McCarter's vehicle. The Defendant willfully and intentionally violated the Agreed Temporary Parenting Plan Order, specifically section 1, section 5, and section 6 on July 31, 2015.

Similarly, with respect to November 18, 2015, the amended motion for criminal contempt alleges that Mother delayed Father's visitation time in the following manner:

> The Father's designee and approved child care provider, his mother, Patricia Spraker, was to pick the child up at the designated place and time. Patricia Spraker had a valid driver's license and proper equipment to transport the minor child on November 18, 2015. When Patricia Spraker contacted Mother prior to the pickup, Mother advised the paternal grandmother she would not be at the location to exchange the child. Mother did not allow Father to begin visitation this day until 4:00 p.m. absent agreement with the Petitioner. The Defendant willfully violated section 1, section 5, and section 6 on November 18, 2015.

Section one of the agreed temporary parenting plan order, referenced in Father's motion for criminal contempt, sets forth the parenting schedule. Section five provides that the receiving parent or his or her designee "will transport the child for visitation, so long as the transporting individual has a valid driver's license and proper equipment for transport of a child this age." Section six states that "approved child care providers while child is in Father's care [are] Ashley McCarter, Trina Howell, or Patricia Spraker." Mother attempts to justify her actions on July 31 and November 18, 2015 by emphasizing that Father's work schedule had changed, that his girlfriend and mother were caring for the child for much of his parenting time, and that mediation should have occurred to change the parenting schedule. Mother argues that "[s]he understood that the mediated agreement was based upon times that the father could actually exercise his co-parenting time."

Mother's arguments are contrary to the actual language of the agreed temporary parenting plan, which explicitly provides for approved child care providers while in the other parent's care. Moreover, the temporary parenting plan states that it "will be modified by agreement, mediation, or hearing upon Father obtaining different employment, Mother discontinuing breastfeeding, or October 1, 2015, whichever occurs first." Thus, contrary to Mother's position, mediation was not the only means for modification of the agreement. Furthermore, she had the option of requesting mediation, or a hearing, if she felt that modification was necessary. Until then, Mother was bound by the terms of the temporary parenting plan. We find no error in the trial court's

decision to find Mother in criminal contempt for her actions on July 31 and November

18, 2015.[3]

## (2) Parenting Plan

Mother argues that the trial court erred in failing to adopt her proposed parenting schedule, pursuant to which Father would have six overnight visits every two weeks. Mother's plan also required each parent to give the other parent the right of first refusal to keep the child in the event that the parent himself or herself could not personally care for the child for a period of four or more hours.[4] Mother asserts, in particular, that the trial court failed to give proper consideration to the fact that she is still breastfeeding and to the parties' employment schedules.

Trial courts have "broad discretion" to fashion parenting plans, as the Tennessee Supreme Court has explained:

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court ... appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous
>
> assessment of the evidence, or relies on reasoning that causes an injustice."

---

[3] Mother also argues that Father is estopped from claiming that she engaged in criminal contempt because he consented to exercising makeup parenting time. There is no evidence of makeup time directly related to the two instances as to which we have found no error. We find no merit in Mother's argument. Mother also assigns error to the trial court's award of attorney fees against her with regard to the criminal contempt award. However, as set forth in the procedural summary above, this part of the trial court's order was amended by agreed order on March 15, 2016, and Mother was not required to pay Father's attorney fees.

[4] The permanent parenting plan adopted by the trial court requires a right of first refusal for a twelve-hour time period during which the parent cannot personally care for the child.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

*Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013). Thus, the *Armbrister* Court concluded, an appellate court will not find that a trial court has abused its discretion unless the trial court's parenting arrangements "'fall[ ] outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Id.* (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)).

On the breastfeeding issue, Mother objects to the following statements made by the trial court in the final order:

> The Court has concerns about the Mother's ability to facilitate a relationship with the Father as she testified that her relationship with the child is more important than the Father's relationship with the child, and that she, the Mother, has custody of the child, and the Father only has visitation with the child, and the Mother's sworn testimony that her relationship with the child was more important than the Father having a relationship with the child.

It should be noted that these statements were made in the context of the court's analysis regarding changing the child's surname, discussed below. Mother asserts that she explained her deposition testimony about being "more important" at the hearing:

> Q. And you were asked [at her deposition] if you are more important of a parent and you testified yes. Why at this time or prior to this time did you think that?
> A. To sustain her life, she has to eat and she eats through me. Again, I've tried to feed her and she refuses. She's very independent. She knows what she wants.
> Q. So the only reason for saying that is because you are her food source?
> A. Yes, I'm her food source. I feel like me and Trevor are—we love her equally. I know that he's just as important as a parent than I am, but unfortunately, he can't feed her breast milk.

Mother further testified that she had difficulty pumping breast milk, had developed numerous infections, and had been advised by her doctor to stop pumping. Mother argues that there was no medical proof that her breastfeeding regimen was inappropriate and that the trial court failed to give proper consideration to the fact that she is still breastfeeding the child.

In considering the best interest of the child and all of the statutory factors pursuant to Tenn. Code Ann. § 36-6-106(a), the trial court made the following finding:

"Breastfeeding does not prohibit Father's co-parenting time. The minor child is thirteen months old and has the ability to eat baby and solid foods as well as drink milk from a sippy cup." The factual findings stated by the court are supported by the evidence.

Mother further asserts that the trial court failed to properly consider the parties' work schedules. Citing *In re Connor S.L.*, No. W2013-00668-COA-R3-JV, 2013 WL 5230258, at *5 (Tenn. Ct. App. Sept. 16, 2013), she argues that she should have received more parenting time because of her greater availability. We disagree. Decisions regarding parenting time are "factually driven." *Armbrister*, 414 S.W.3d at 693. In *In re Connor S.L.*, both parents worked; the mother's job at the child's day care allowed her to be more available for parenting time than the father, who had two jobs, would be. *In re Connor S.L.*, 2013 WL 5230258, at *11. In the present case, Mother has chosen not to work in order to stay at home with the child; Father is working two jobs in an effort to support himself and the child. The trial court stated that, pursuant to Tenn. Code Ann. § 36-6-106(a)(14), it took Father's work schedule into account "in the formulation of the day to day co-parenting schedule."

The trial court analyzed all of the other statutory factors set forth in Tenn. Code Ann. § 36-6-106(a) as follows:

a. Pursuant to Tenn. Code Ann. § 36-6-106(a)(1), the strength, nature, and stability of the child's relationship with each parent: The Mother has performed most of the day to day parenting because of her own decision to restrict the Father's co-parenting time.

b. Pursuant to Tenn. Code Ann. § 36-6-106(a)(2)[,] each parent's or caregiver's past and potential for future performance of parenting responsibilities: the Mother is not attempting to facilitate a relationship with the Father. Based on a reading of the text messages exchanged between the parties and submitted as a collective exhibit to the Court, the Mother has a practice of limiting the Father's co-parenting time due to reasons because it is cold outside to the Father cannot make up his visitation because the Mother said so. No proof was proffered as to any just reason to restrict the Father's co-parenting time. The Court has concerns about the Mother's ability to foster a relationship between the child and the Father.

c. Pursuant to Tenn. Code Ann. § 36-6-106(a)(3), refusal to attend a court ordered parent education seminar: while not a factor for ruling as no parenting class was previously ordered, both parents shall complete a parenting class within sixty days. . . .

d. Pursuant to Tenn. Code Ann. § 36-6-106(a)(4), the disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care: Both parents are willing and able

- 11 -

to provide the child with food, clothing, medical care, education and other necessary care.

e. Pursuant to Tenn. Code Ann. § 36-6-106(a)(5), the degree to which a parent has been the primary caregiver: the Mother has been the primary caregiver since the child's birth and the Court takes this into consideration.

f. Pursuant to Tenn. Code Ann. § 36-6-106(a)(6), the love, affection, and emotional ties existing between each parent and the child: The child is bonded with both parents. This is not a determining factor.

g. Pursuant to Tenn. Code Ann. § 36-6-106(a)(7), the emotional needs and developmental level of the child: The child is developing well and maximization of co-parenting should occur . . . for the emotional and developmental needs of the child.

h. Pursuant to Tenn. Code Ann. § 36-6-106(a)(9), the child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities: The child has a sibling, a half-brother, and this relationship needs to be fostered. Further, both parents have extended family and the child needs as much contact with extended family as possible to foster those relationships.

i. Pursuant to Tenn. Code Ann. § 36-6-106(a)(10), [t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment: The child is young, being thirteen months old, and while the Mother has been the primary residential parent, the child will adapt to the co-parenting schedule.

j. Pursuant to Tenn. Code Ann. § 36-6-106(a)(11), evidence of physical or emotional abuse . . . . There has been no evidence as to any abuse.

k. Pursuant to Tenn. Code Ann. § 36-6-106(a)(12), the character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child: There are no concerns in either of the parent's homes. The only concern is the Mother's lack of knowledge of her boyfriend's history of drug abuse. A reasonable parent would fully inform themselves regarding the drug abuse history of a paramour, if not for current concerns, but to know what to look for in the future.

l. Pursuant to Tenn. Code Ann. § 36-6-106(a)(13), the reasonable preference of the child if twelve (12) years of age or older: This factor does not apply.

. . . .

n. Pursuant to Tenn. Code Ann. § 36-6-106(a)(8), the moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child: There are no concerns with either parent's fitness

- 12 -

as a parent.

The trial court found that Father "is a good parent and shows a willingness to co-parent." Therefore, the court stated, "Co-parenting time with the Father, by law, should be maximized." The trial court concluded that, "It is in the best interest of the minor child that the Father immediately have overnights with the child but that the extended periods of overnight be on a graduated plan."

We cannot say that the trial court abused its discretion in declining to adopt the parenting schedule proposed by Mother and in adopting the parenting schedule incorporated in the final order. Under the permanent parenting plan enacted by the trial court, each parent has equal parenting time and an equal number of overnight visits, but the regular parenting time is staggered so that the child is never away from either parent for more than three days. The trial court considered all of the relevant statutory factors and entered a parenting plan that does not "'fall[ ] outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge*, 42 S.W.3d at 88).[5]

### (3) Temporary Child Support

The agreed temporary parenting plan order entered by the trial court on May 21, 2015, based upon the parties' agreement reached in mediation, provides: "Father shall pay child support in the amount of $300.00 per month to Mother . . . , beginning in June, with no arrearage owing. Parties agree that this amount is correct as a deviation from the guidelines given Father's time with the child." Mother asserts that the trial court erred in

---

[5] Mother objects to a provision in the parenting plan providing that the child's entry into kindergarten "shall constitute a material change in circumstance and the parties shall mediate prior to the child being enrolled in school." She contends that this provision makes the plan a temporary, rather than a permanent, parenting plan. Mother cites no authority for this argument and states only that this provision is "very confusing" and "clear error." Tennessee Rule of Appellate Procedure 27(a)(7)(A) provides that "[t]he brief of the appellant shall contain . . . [a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." A "[p]laintiff's failure to comply with the Rules of Appellate Procedure and the rules of this Court waives the issues for review." *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). In her brief, Mother states an argument but does not provide reasons or authority to support that argument. We, therefore, consider this issue waived.

It should be noted that, under Tenn. Code Ann. § 36-6-101(a)(2)(C), in cases involving modification of a residential parenting schedule (not modification of the primary residential parent), a material change of circumstance "may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age . . . ."

- 13 -

setting temporary child support at $300 a month because there was no child support worksheet and no proper explanation for the deviation from the child support guidelines.

The child support guidelines provide that they "shall be applicable in every judicial or administrative action to establish, modify, or enforce child support, whether temporary or permanent . . . ." TENN. COMP. R. & REGS. 1240-02-04-.01(2)(a). The child support guidelines contain the following requirements regarding deviations from the amount of child support required pursuant to the guidelines:

> (b) The tribunal may order as a deviation an amount of support different from the amount of the presumptive child support order if the deviation complies with the requirements of this paragraph (1) and with this chapter. The amount or method of such deviation is within the discretion of the tribunal provided, however, the tribunal must state in its order the basis for the deviation and *the amount the child support order would have been without the deviation.* In deviating from the Guidelines, primary consideration must be given to the best interest of the child for whom support under these Guidelines is being determined.
> (c) When ordering a deviation from the presumptive amount of child support established by the Guidelines, the tribunal's order shall contain written findings of fact stating:
> 1. The reasons for the change or deviation from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and
> 2. The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and
> 3. How, in its determination,
> (i) *Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and*
> (ii) *The best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount.*

TENN. COMP. R. & REGS. 1240-02-04-.07(1) (emphasis added). Although the agreed temporary parenting plan order states that the deviation from the child support guideline amount is justified by "Father's time with the child," the order does not give the presumptive amount of child support or discuss how application of the guidelines "would be unjust on inappropriate" or how deviation would serve the best interest of the child.[6] TENN. COMP. R. & REGS. 1240-02-04-.07(1)(c).

---

[6] The fact that temporary support was set through an agreement of the parties is not dispositive. "'[A]s a general rule, a custodial parent may not waive her minor child's right of support.'" *Huntley v. Huntley*, 61 S.W.3d 329, 335-36 (Tenn. Ct. App. 2001) (quoting *Norton v. Norton*, No. W1999-02176-COA-R3-CV, 2000 WL 52819, at *4 (Tenn. Ct. App. Jan.10, 2000)).

Because the order setting temporary child support does not comply with the requirements of the child support guidelines, we must vacate this part of the order and remand for a determination that complies with the guideline requirements.

(4) Wage Assignment

Mother asserts that the trial court erred, in the permanent parenting plan, in failing to order Father to pay child support by wage assignment despite a specific finding that Father was in arrears.

Tennessee Code Annotated section 36-5-501 provides as follows with respect to income withholding:

> (a)(1) For any order of child support issued, modified, or enforced on or after July 1, 1994, the court *shall order an immediate assignment of the obligor's income*, including, but not necessarily limited to: wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, profit sharing, interest, annuities, and other income due or to become due to the obligor. *The order of assignment shall issue regardless of whether support payments are in arrears on the effective date of the order.* The court's order, shall include an amount sufficient to satisfy an accumulated arrearage, if any, within a reasonable time. The order may also include an amount to pay any medical expenses that the obligor owing the support is obligated or ordered to pay. Withholding shall not exceed fifty percent (50%) of the employee's income after FICA, withholding taxes, and a health insurance premium that covers the child, are deducted. The order shall also include an amount necessary to cover the fee due the clerk of the court or the department, if appropriate. In the event the court does not order an immediate assignment pursuant to subdivision (a)(2), every order shall be enforceable by income assignment as provided in this chapter.
>
> (2)(A) *Income assignment under this subsection (a) shall not be required:*
>
> (i)     If, in cases involving the modification of support orders, upon proof by one party, there is a *written finding of fact in the order of the court that there is good cause not to require immediate income assignment* and the proof shows that the obligor has made timely payment of previously ordered support. "Good cause" shall only be established upon proof that the immediate income assignment would not be in the best interests of the child. The court shall, in its order,

state specifically why such assignment will not be in the child's best interests; or

(ii)    If there is a *written agreement* by both parties that provides for alternative arrangements. Such agreement must be reviewed by the court and entered in the record.

(Emphasis added).

By its clear language, Tenn. Code Ann. § 36-5-501(a) makes it mandatory for a trial court to "order an income assignment, absent specific statutory exceptions [quoted above]." *Horine v. Horine*, No. E2013-02415-COA-R3-CV, 2014 WL 6612557, at *9 (Tenn. Ct. App. Nov. 24, 2014); *see also Reeder v. Reeder*, 375 S.W.3d 268, 277 (Tenn. Ct. App. 2012) (finding no error in trial court's wage assignment due to Father's failure to show good cause to be excused from requirement). In the present case, there is no written agreement between the parties for alternative arrangements for the payment of child support. As to the first exception, the trial court's order does not contain written findings setting forth good cause to excuse Father from wage assignment.[7] We, therefore, agree that the trial court erred in failing to order Father to pay child support by wage assignment.

(5) Name Change

Mother's final argument is that the trial court erred in changing the child's surname to Father's surname.

Pursuant to Tenn. Code Ann. § 68-3-305(b)(1), the surname of a child born to an unmarried mother shall be the surname of the mother or the mother's maiden surname or a combination of those two surnames. *See also In re Joseph H.*, No. M2014-01765-COA-R3-JV, 2015 WL 5032066, at *3 (Tenn. Ct. App. Aug. 25, 2015). A child's surname does not change as the result of a paternity determination unless the court so orders. *In re Jacob H.C.*, No. M2012-02421-COA-R3-CV, 2013 WL 6155608, at *3 (Tenn. Ct. App. Nov. 20, 2013); *Sullivan v. Brooks*, No. M2009-02510-COA-R3-JV, 2011 WL 2015516, at *1 (Tenn. Ct. App. May 23, 2011).

The standards for analyzing the propriety of changing a nonmarital child's surname are set forth in *Barabas v. Rogers*:

---

[7] In *Horine*, this Court noted that "Section 36-5-501(a)(2)(A)(i) [the good cause exception] only appears to apply when a party is seeking a modification of a previously ordered child support award." *Horine*, 2014 WL 6612557, at *10. Because the trial court's permanent parenting plan was not a modification of child support, this exception would not even apply.

The courts should not change a child's surname unless the change promotes the child's best interests. Among the criteria for determining whether changing a child's surname will be in the child's best interests are: (1) the child's preference, (2) the change's potential effect on the child's relationship with each parent[,] (3) the length of time the child has had its present surname, (4) the degree of community respect associated with the present and proposed surname, and (5) the difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname. The parent seeking to change the child's surname has the burden of proving that the change will further the child's best interests.

*Barabas v. Rogers*, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993) (citations omitted). Furthermore, "[t]he amount of proof required to justify the change is 'not insubstantial.'" *In re A.C.S.*, No. M2008-898-COA-R3-JV, 2009 WL 348510, at *3 (Tenn. Ct. App. Feb. 12, 2009) (quoting *Brown v. Baird*, No. 01A01-9704-JV-00148, 1997 WL 638278, at *1 (Tenn. Ct. App. Oct. 17, 1997)). "Minor inconvenience or embarrassment" is not sufficient. *Brown*, 1997 WL 638278, at *1.

At the hearing, Father was asked for the reasons why it was important to change the child's surname to his surname. He emphasized that Mother's surname is not the surname of her biological father.[8] We do not consider this fact relevant, however. Mother's surname is her surname. Father also testified: "I want my daughter growing up having my last name, you know, having, you know, relation to the last name. It doesn't make sense to why [Mother] wouldn't want her daughter to have her father's last name, but her sisters' dad's last name." The mere preference of a parent is not a reason to justify a name change under Tenn. Code Ann. § 68-3-305(b)(1). *See Whited v. Fleenor*, No. E2002-01185-COA-R3-JV, 2003 WL 1092968, at *2 (Tenn. Ct. App. Mar. 13, 2003) (stating that "[t]here is nothing to indicate in the best interest analysis that incorporates as a relative factor the mere preference of a parent to bestow his or her name); *see also In re Joseph H.*, 2015 WL 5032066, at *6.

In its final order, the trial court used different reasoning to justify its decision to change the child's surname to Father's surname. The court went through the *Barabas* factors:

a. The child's preference: none.
b. The change's potential effect on the child's relationship with each parent: This factor is the determining factor. The Mother has allowed her boyfriend the benefits of paternity that she has not allowed the

---

[8] Mother's surname is the surname of her legal father, to whom Mother's mother was married at the time of her birth.

Father [by allowing him overnight visits in the household with Mother and the child]. The Court has concerns about the Mother's ability to facilitate a relationship with the Father as she testified that her relationship with the child is more important than the Father's relationship with the child, and that she, the Mother, has custody of the child, and the Father only has visitation with the child, and the Mother's sworn testimony that her relationship with the child was more important than the Father having a relationship with the child. The Mother's history of thwarting the Father's co-parenting time was also a consideration, as well as the Mother's hostility towards the Father and the extended (paternal) family. *Based on this history, changing the child's surname to that of the Father will further strengthen their relationship.*

c. The length of time the child has had its present surname: The time the child has had the last name of Smithwick is short given the child is thirteen months old.

d. The degree of community respect associated with the present and proposed surname: Neither parent's surname is either disreputable or respected in the community.

e. The difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname: There is none. The child likely does not even know [its] current surname.

(Emphasis added). Thus, the sole reason for the trial court's decision to change the child's surname to Father's surname was its concern over Mother's previous attempts to thwart the relationship between Father and child and its belief that changing the child's surname would somehow strengthen the relationship between the child and Father. The burden of proof was upon Father to support a finding that a change of surname would serve the best interest of the child. We find no evidence in the record to support a conclusion that changing the child's surname to Father's surname would improve the relationship between Father and the child. *See generally In re A.C.S.*, 2009 WL 348510, at \*3 (finding that "there appears no proof that a change of the child's surname will effect a change in the child's relationship with either parent").

We conclude that the trial court erred in changing the child's surname to Father's surname.

CONCLUSION

We reverse the trial court's finding of criminal contempt with respect to the November 2015 incident, but affirm the trial court's decision regarding the other two criminal contempt findings. We affirm the trial court's decision regarding the permanent

parenting schedule.  We vacate the trial court's determination of temporary child support, and reverse its determinations regarding wage assignment and changing the child's surname.  This case is remanded to the trial court for further proceedings consistent with this opinion.  Costs of this appeal shall be taxed equally to both parties, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE